Ida BERGSTROM, a minor child, by her guardian Ad Litem, Cameron L. Clemens, Plaintiff,

v.

Astrid BERGSTROM, Alan Bergstrom, and any and all authorized representatives as may be designated by them, Defendants.

No. A1–79–112.

United States District Court,
D. North Dakota,
Southwestern Division.

Oct. 12, 1979.

Irvin B. Nodland, Bismarck, N. D., for plaintiff.

Daniel James Chapman, Bismarck, N. D., for defendants.

## MEMORANDUM AND ORDER

VAN SICKLE, District Judge.

Astrid S. Bergstrom was granted a legal separation from bed and board from Alan H. Bergstrom in the Superior Court for the District of Columbia, Family Division, on February 15, 1978, followed by a decree of divorce issued on February 1, 1979. In its findings of fact, conclusions of law and order, the Superior Court awarded custody of the couple's then seven year old daughter, Ida Marie, to her mother, Astrid, who currently resides in the Kingdom of Norway. Following five post-trial motions by Astrid and two such motions by Alan, the parties agreed to submit their respective positions to the Superior Court under compulsory arbitration, and thereby reached a Consent Agreement which was signed by

both parties on January 29, 1979, and incorporated by Order of the Superior Court that same day. That order directed that both Alan and Astrid were to dismiss, with prejudice, their various cross-appeals that were pending in the District of Columbia Court of Appeals and among other things, that:

"[N]either party will lodge any further appeals of any type, nor bring any further action based on this case with the exception of any matters involving a change of circumstances necessitating a review of custody."

On August 23, 1978, prior to the signing of the Consent Agreement in Washington, D. C., Alan, as Ida's Guardian Ad Litem, commenced an action in the District Court for the Fourth Judicial District of North Dakota before The Honorable Gerald G. Glaser, asking, in essence, that the court assume jurisdiction over Ida for purposes of all child custody determinations and visitation rights. On September 18, 1978, in a memorandum opinion and order, the District Court found that the jurisdictional requirements of the Uniform Child Custody Jurisdiction Act, Chapter 14–14, North Dakota Century Code, had not been satisfied and that the:

" . . . best interests of [Ida] dictate[d] that the initial [Superior Court] decree awarding custody [to Astrid] should remain in effect pending final resolution of the question of custody, . . ."

With that the Court dismissed the action and subsequently entered an addendum to its memorandum opinion and order that required Alan to return Ida to:

" . . . the custody of [Astrid] or of the mother's authorized representative within ten days . . . ."

After applying for and being denied an ex parte order staying the execution of the District Court's orders, Alan then petitioned the Supreme Court of North Dakota for a stay of the orders of the District Court pending appeal to that Supreme Court.

On October 16, 1978, the Supreme Court of North Dakota being unable to find that the District Court had abused its discretion, denied the petition to stay pending appeal. *Bergstrom v. Bergstrom,* 271 N.W.2d 546 (N.D.1978).

Ida Marie Bergstrom, by her Guardian Ad Litem, Cameron L. Clemens, instituted her own action in this Court on October 20, 1978, requesting an order:

" . . . prohibiting the removal of Ida from the United States of America against her wishes by any person whatsoever."

In that action Ida asserted that she was being denied the privileges and immunities due all citizens of the United States by being forced to leave the United States and reside with Astrid in Norway. Ida's request for a Temporary Restraining Order was denied because of the then pending appeal in the District of Columbia Court of Appeals.

Ida then returned to Norway for the upcoming school year as required by the original custody order of the Superior Court. Upon returning to the United States to live with Alan for the summer months in North Dakota, Ida instituted this action asking that Astrid Bergstrom be restrained from carrying out the directive of the Superior Court requiring that Ida be returned to Norway in August of 1979.

In Orders issued the 15th and 16th days of August, 1979, this Court added Alan Bergstrom as a party defendant and restrained any persons having custody or control of Ida from returning her to Norway for a period of ten days. In addition, it was ordered that Ida be evaluated by a psychologist or psychiatrist selected by the Court to determine the true preferences of Ida absent the influence of either her father or mother. In support of the decision to restrain the removal of Ida from the United States this Court found that immediate and irreparable injury would result to Ida Bergstrom if she was required to return to Norway under circumstances where she may be denied the privileges accorded other citizens of the United States, and that there was a reasonable probability that Ida would prevail on the merits of the action. *Minnesota Bearing Co. v. White Motor Corp.,* 470

F.2d 1323 (8th Cir. 1973). These proscriptions were extended to October 4, 1979, so that a hearing could be held on October 1, 1979. Following that hearing, the order was again extended to October 14, 1979, to afford the Court sufficient time to resolve the issues raised at the October 1st hearing.

It is asserted that jurisdiction exists over this action pursuant to 28 U.S.C. § 1332(a), the diversity statute; 28 U.S.C. § 1331(a), the statute affording the United States District Courts original jurisdiction over controversies arising under the Constitution, laws or treaties of the United States; and 42 U.S.C. § 1981, dealing with violation of civil rights.

One fact is immediately apparent. This Court is not the only available forum for the redress of the issues presented. Obviously, the Superior Court for the District of Columbia, Family Division, retains continuing jurisdiction over the parties to modify its orders upon a showing of changed circumstances. Why then should this Court assert "original jurisdiction" over a matter which at first blush appears to be nothing more than a continuation of the custody dispute begun by Alan and Astrid Bergstrom in September of 1977. The answer lies in the realization that a person who was afforded no voice in the Superior Court's determination has now come before this Court raising issues which are strictly constitutional in dimension, and are only tangentially related to the domestic relations of Alan and Astrid Bergstrom.

■ Title 28 U.S.C. § 1332(a) provides that the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds $10,000 and is between:

". . . citizens of a State and Citizens or subjects of a foreign state;"

or between:

". . . citizens of different States."

Although a very well researched argument has been presented asserting that defendant Astrid Bergstrom has, by virtue of certain treaties between the United States and Norway, lost her naturalized United States citizenship, the fact remains that Alan Bergstrom has been added as a party to this action and his status as resident of the same state as Ida, i. e., North Dakota, destroys diversity and denies the court jurisdiction based upon that statute.

■ Nor can jurisdiction be found under 42 U.S.C. § 1981, in that application of that section is limited to instances of racial discrimination. *Patterson v. American Tobacco Co.*, 535 F.2d 257 (4th Cir. 1976), *cert. denied*, 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286; *Gay Lib v. University of Missouri*, 416 F.Supp. 1350 (D.C.Mo.1976), reversed on other grounds, 558 F.2d 848, *cert. denied, Ratchford v. Gay Lib*, 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 789, *rehearing denied*, 435 U.S. 981, 98 S.Ct. 1632, 56 L.Ed.2d 74. Plaintiff has not alleged that she has been discriminated against because of her race and therefore has not stated any claim for relief arising under Section 1981.

Plaintiff further asserts that jurisdiction exists pursuant to 28 U.S.C. § 1331(a), which provides:

"The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States. . . ."

■ In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation. *Hunt v. Washington Apple Advertising Commission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Hedberg v. State Farm Mutual Automobile Insurance Co.*, 350 F.2d 924 (8th Cir. 1965); 1 Moore, Federal Practice ¶¶ 0.95, 0.96 (2d ed. 1975); C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3708 (1976). Here, that object is the right of a citizen of the United States to remain in this country. I find the value of that right exceeds the minimum requirement.

■ Plaintiff asserts that her cause of action arises under the Equal Protection and Privileges and Immunities clauses of

the Fourteenth Amendment to the Constitution. It is well settled that the commands of the Fourteenth Amendment are addressed only to the State or to those acting under color of its authority. See, e. g., *Civil Rights Cases,* 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883); *United States v. Harris,* 106 U.S. 629, 1 S.Ct. 601, 27 L.Ed. 290 (1883); *United States v. Cruikshank,* 92 U.S. 542, 23 L.Ed. 588 (1876). These holdings raise the issue of whether the individual private defendants to this action, in carrying out the dictates of the custody order of the Superior Court, dated February 15, 1978, have somehow employed the authority of a "state."

■ In *District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), the Supreme Court of the United States provided the answer. It held the District of Columbia is *not* a "State or Territory" within the meaning of 42 U.S.C. § 1983. This holding must be coupled with the numerous decisions that the "under color" of law requirement of § 1983 has consistently been treated as the same thing as the "state action" requirement under the Fourteenth Amendment, see *U. S. v. Price,* 383 U.S. 787, 794, n.7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966), and the independent holding that the District of Columbia is not a "state" within the meaning of the Fourteenth Amendment. Also see *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Together they compel the decision that an action by the Superior Court for the District of Columbia is not "state action." Therefore, plaintiff has failed to show that this claim "arises under" either the Fourteenth Amendment or § 1983.

■ This finding does not, however, dispose of the jurisdictional issue. Although plaintiff did not plead the Fifth Amendment as a basis for jurisdiction, that argument was presented orally at the October 1st hearing on this case; and matters raised in such context are considered to be raised in the pleadings. Fed.R.Civ.P. 15(b).

Is a cause of action under the Fifth Amendment present when two *private individuals* are sought to be enjoined from carrying out the dictates of the decree of the Superior Court for the District of Columbia?

■ A cause of action can be implied directly under the Constitution when the due process clause of the Fifth Amendment has allegedly been violated. *Davis v. Passman,* —— U.S. ——, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); Cf. *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). However, the due process clause of the Fifth Amendment applies to and restricts only the federal government and not private persons. *Public Utilities Commission v. Pollack,* 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068 (1952). There is therefore a "federal action" requirement under the Fifth Amendment and the standards utilized to find federal action are identical to those employed to detect state action subject to the strictures of the Fourteenth Amendment. *Ponce v. Housing Authority of County of Tulare,* 389 F.Supp. 635, 648 (E.D.Cal.1975); see, also, *United States v. Davis,* 482 F.2d 893, 897, n.3 (9 Cir. 1973).

In *Henry v. First National Bank of Clarksdale,* 595 F.2d 291 (5 Cir. 1979), the Court of Appeals for the Fifth Circuit states what is apparently the general rule with regard to the nexus between courts and the "state action" requirement:

"The mere availability of a forum for the resolution of private conflicts does not clothe private litigants with the authority of the state." *Id.* at 296.

For purposes of finding the requisite state action, however, the Circuit Court distinguished the situation where private parties have merely brought an action in state court, from the situation where a private party has procured a judgment and is able to enlist the power of the state on his behalf in enforcing the judgment:

"The requisite state action which we found absent in *Henry I* has since been supplied by entry of the state Chancery Court judgment which is immediately en-

forceable. The crucial difference between a private party who has merely filed a civil suit in a state forum and the successful litigant who possesses an immediately enforceable state judgment is that in the latter case the full power and authority of the state can be invoked on behalf of the litigant. *It is this exercise of state power that provides state action for purposes of the Fourteenth Amendment and Section 1983."* (Emphasis added) *Id.* at 299.

Cf., *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).

■ While there is language to the contrary in some decisions,[1] I feel that *Henry* represents the better reasoned opinion. Alan and Astrid Bergstrom in carrying out the immediately enforceable custody order of the Superior Court have thereby invoked the full power and authority of the District of Columbia, thereby providing the required "federal action." This case therefore arises under the Constitution of the United States, i. e., the Fifth Amendment, thereby giving this Court original jurisdiction under 28 U.S.C. § 1331(a).

■ One final statement concerning jurisdiction is in order. It has been asserted that because of the bad faith exhibited by the bringing of this action in what appears to be direct violation of the Consent Agreement signed by Alan and Astrid Bergstrom on January 29, 1979, in which both parties agreed not to bring any further action based on that case, this Court should decline to exercise its original jurisdiction. The answer to that assertion is that whatever the obligations of Ida's parents might be under the Consent Agreement, Ida cannot be foreclosed from asserting her Constitutional rights by the mere assertion that in so doing a Consent Agreement has been violated.

■ Ida Marie Bergstrom is a United States citizen, born January 3, 1971, in Asmara, Ethiopia, while her father Alan, an American Citizen, was employed by the State Department. As a United States citizen living in the Kingdom of Norway, Ida cannot be afforded the basic rights guaranteed by the Constitution to every American citizen who resides in this country.[2] After careful consideration, I find that at the age of eight years and ten months, Ida is of sufficient age, discretion and intelligence to exercise an intelligent preference apart from the preference of either her mother or father; that preference being to remain in the United States and not to return to Norway.[3]

Although the Supreme Court has been reluctant to attempt to define "the totality of the relationship of the juvenile and the state," [*In re Gault,* 387 U.S. 1, 13, 87 S.Ct. 1428, 1436, 18 L.Ed.2d 527 (1967)] certain principles have been recognized:

"Minors, as well as adults, are protected by the Constitution and possess constitutional rights."

---

1. See for e. g., *Nouse v. Nouse,* 450 F.Supp. 97 (D.Md.1978); *Gras v. Stevens,* 415 F.Supp. 1148 (S.D.N.Y.1976); *Merrick v. Merrick,* 441 F.Supp. 143 (S.D.N.Y.1977). Close scrutiny of these decisions reveals that in the two New York decisions the petitioners came before the district courts before the state court actions had been finally resolved, thus placing these decisions within the general rule with which this Court fully agrees; that the mere availability of a state forum is not sufficient to show that a private litigant has become involved in "state action."

2. The order of the Superior Court for the District of Columbia recognizes that Astrid will take Ida with her to the Kingdom of Norway as a result of that order. It has also been intimated to this Court that Astrid may soon move to Behrain, an island in the Gulf of Persia. Independent research done by this Court through the aid of the computerized Legal Research Librarian for the Eighth Circuit Court of Appeals has established that neither the Kingdom of Norway nor Behrain have any treaties with the United States which would extend the guarantees of the Constitution of the United States to private American citizens residing in those countries.

3. In its order dated August 15, 1979, this Court directed that Ida Bergstrom be evaluated by an independent psychologist or psychiatrist to determine the true preference of Ida absent the influence of her mother and father. The findings of this clinical psychologist supported several other such reports and concluded that "Ida appears to have a *genuine desire to remain in* the United States."

*Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52 at 74, 96 S.Ct. 2831 at 2843, 49 L.Ed.2d 788. "[W]hatever may be their precise impact, neither the Fourteenth Amendment nor the Bill of Rights is for adults alone." *In re Gault, supra,* 387 U.S. at 13, 87 S.Ct. at 1436.

"Thus minors are entitled to constitutional protection for freedom of speech, *Tinker v. Des Moines School Dist.,* 393 U.S. 503 [, 89 S.Ct. 733, 21 L.Ed.2d 731] (1969); *West Virginia Board of Education v. Barnette,* 319 U.S. 624 [, 63 S.Ct. 1178, 87 L.Ed. 1628] (1943); equal protection against racial discrimination, *Brown v. Board of Education,* 347 U.S. 483 [, 74 S.Ct. 686, 98 L.Ed. 873] (1954); due process in civil contexts, *Goss v. Lopez,* 419 U.S. 565 [, 95 S.Ct. 729, 42 L.Ed.2d 725] (1975); . . ." *Carey v. Population Service International,* 431 U.S. 678, 692 n.14, 97 S.Ct. 2010, 2020 n.14, 52 L.Ed.2d 675 (1977).

The above line of cases clearly indicate that Ida's minority has no effect on her legal capacity to assert what she believes to be her basic constitutional right as a citizen to remain in this country.

■ A "citizen" in the popular and appropriate sense of the term, is one who, by birth, naturalization, or otherwise, is a member of an independent political society, called a state, kingdom, or empire, and as such subject to its laws and entitled to its protection in all his rights incident to that relation. The derivation of the word from the Latin "civtas" conveys the idea of connection or identification with the state or government and participation in its functions; and it implies the right of residence. 3 Am.Jur.2d, *Aliens and Citizens* § 115.

■ The central privilege of America citizenship is the right to live in the United States for as long as one sees fit. *Lopez v. Franklin,* 427 F.Supp. 345, 348 (E.D.Mich. 1977); *Acosta v. Gaffney,* 558 F.2d 1153, 1157 (3rd Cir. 1977). This basic right was elucidated by Justice Black in *Afroyim v. Rusk,* 387 U.S. 253, 87 S.Ct. 1660, 18 L.Ed.2d 757 (1967):

"We hold that the Fourteenth Amendment was designed to, and does, protect every citizen of this Nation against a congressional forcible destruction of his citizenship, whatever his creed, color, or race. Our holding does no more than to give to this citizen that which is his own, *a constitutional right to remain a citizen in a free country unless he voluntarily relinquishes that citizenship." Id.* at 268, 87 S.Ct. at 1668 (emphasis added).

■ This Court has been shown no laws, statutes or holdings which would authorize a court of domestic relations to remove a minor American citizen from the protection of the Constitution and laws of the United States against her will. Regardless of the ability of the then seven year old Ida to state a preference as to her residence at the time of the Superior Court's decree, the doctrine of "best interests" cannot now be extended to deprive Ida of her intelligently asserted preference as an American citizen to remain in this country.[4] By enforcing and abiding by the custody award of the Superior Court, and in so doing invoking the full power and au-

---

4. The Superior Court was well aware that by granting custody during the school year to Astrid it was, in effect, ordering that Ida reside in Norway for that period of time. Paragraph 14 of the Superior Court's findings of fact provides:

"In the context of the reality of this case, the needs and interests of the child can best be served by placing the mother in the central role as custodian, contemplating that the child will be with the mother and be under her care and guidance for the school year *whether or not the mother and child's residence be Norway or the United States.*"

When confronted with a situation whereby a twenty-two month old American citizen was asserting that his right to remain in the United States was being violated by the deportation of his alien parents, the Court of Appeals for the Third Circuit made the following findings and observations:

"It is the fundamental right of an American citizen to reside wherever he wishes, whether in the United States or abroad, and to engage in the consequent travel. [Citations omitted]. It is the right to exercise a choice of residence, not an obligation to remain in one's native country whether one so desires or not, as is required in some totalitarian countries. In the case of an infant below the age of discretion the right is purely theoretical, however, since the infant is incapable of exercising it.

thority of the District of Columbia, Alan and Astrid Bergstrom have also violated Ida Marie Bergstrom's right to liberty without due process guaranteed by the Fifth Amendment of the Constitution.

The defendants, Alan and Astrid Bergstrom are hereby enjoined from carrying out the dictates of paragraph 2 of the Order of the Superior Court for the District of Columbia, Family Division, dated February 15, 1978, pertaining to the removal of Ida Marie Bergstrom to the Kingdom of Norway. In so ordering, I leave all questions of custody of Ida Marie Bergstrom, *within the United States*, to the courts having the appropriate jurisdiction.

This Memorandum and Order is deemed to satisfy the requisites of Rule 52 of the Federal Rules of Civil Procedure.

Counsel for the Plaintiff will prepare and submit an appropriate form of judgment.

\* \* \* \* \* \*

The right of an American citizen to fix and change his residence is a continuing one which he enjoys throughout his life. Thus while today Lina Acosta, as an infant twenty-two months of age, doubtless desires merely to be where she can enjoy the care and affection of her parents, whether in the United States or Colombia, she will as she grows older and reaches years of discretion be entitled to decide for herself where she wants to live and as an American citizen she may then, if she so chooses, return to the United States to live. Thus, her return to Colombia with her parents, if they decide to take her with them as doubtless they will, will merely postpone, but not bar, her residence in the United States if she should ultimately choose to live here."

*Acosta v. Gaffney*, 558 F.2d 1153, 1157–58 (3rd Cir. 1977).