**Ida BERGSTROM, a minor child, by her Guardian Ad Litem, Cameron L. Clemens, Appellee,**

**v.**

**Astrid BERGSTROM and any and all authorized representatives as may be designated by her, Appellant,**

**Alan Bergstrom.**

**No. 79–2012.**

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1980.

Decided June 13, 1980.

---

Daniel J. Chapman, Chapman & Chapman, Bismarck, N. D., for appellant.

Irvin B. Nodland, Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, N. D., for appellee.

Before LAY, Chief Judge, ROSS, Circuit Judge, and LARSON, District Judge *.

LAY, Chief Judge.

In this unusual case, Astrid Bergstrom appeals an order of the federal district court, 478 F.Supp. 434, enjoining her and her husband from removing their nine year old daughter from the United States under a custody decree granted by the Superior Court for the District of Columbia. The district court granted injunctive relief on the ground that the child has a constitutional right as a United States citizen to remain in this country. We vacate the decision and remand to the district court with directions to dismiss the complaint.

We review the chronology of events to date.

On February 15, 1978, Astrid and Alan Bergstrom, both United States citizens, were granted a legal separation by the Superior Court for the District of Columbia,

Family Division. Custody of the couple's minor child, Ida, then age 7, was awarded to Astrid Bergstrom during the school year, and to Alan Bergstrom during the summer months. The Bergstroms were divorced February 1, 1979, and by agreement of the parties the custody arrangements remained basically the same.

Following the separation, Astrid and Ida moved to Oslo, Norway, where Ida was enrolled in an American school. The next summer Ida was returned to the United States to live with her father in North Dakota pursuant to the terms of the custody order. On August 23, 1978, Alan Bergstrom filed an action on behalf of Ida in the North Dakota State District Court requesting that court to determine custody and visitation rights. The action was dismissed for failure to satisfy the jurisdictional requirements of the Uniform Child Custody Jurisdiction Act, which has been adopted by North Dakota. N.D.Cent. Code ch. 14–14. Alan Bergstrom's request for a stay pending appeal to the North Dakota Supreme Court was denied. *Bergstrom v. Bergstrom*, 271 N.W.2d 546 (N.D.1978). Thereupon Ida, by Guardian ad Litem Cameron L. Clemens, filed suit in federal district court for an order prohibiting her removal from the United States. The federal district court denied relief because of pendency of the divorce proceedings in the District of Columbia, and Ida returned to Norway.

In August, 1979, while Ida was again spending the summer with her father in North Dakota, this action was commenced in federal district court on her behalf by her guardian ad litem, Cameron L. Clemens. The complaint seeks declaratory and injunctive relief on the grounds that Ida's removal from the United States violates her right as a citizen to live in this country, and denies her the privileges and immunities enjoyed by United States citizens. The district court entered an order restraining her removal from the United States, and ordered an evaluation by a court-appointed psychiatrist.

* The Honorable Earl R. Larson, Senior District Judge for the District of Minnesota, sitting by designation.

A hearing was held on October 1, 1979, at which Ida, her father, and the parties' attorneys were present. There were no witnesses. The psychiatrist submitted his opinion to the court by letter. On the basis of his opinion, the court held that Ida, who was then eight years, ten months old, was capable of intelligently exercising her right as a citizen to remain in the United States, and that her removal deprived her of liberty without due process of law. The parents were enjoined from carrying out the order of the District of Columbia court insofar as it required her to leave the United States. The court concluded: "In so ordering, I leave all questions of custody of Ida Marie Bergstrom, *within the United States*, to the courts having the appropriate jurisdiction." This appeal followed.

Shortly thereafter, a custody action was instituted in the North Dakota state district court by Alan Bergstrom. The matter was tried in December 1979. All parties were present at the hearing and represented by counsel. Both sides presented witnesses and conducted cross-examinations. In addition, Ida was personally interviewed by the state court judge. He concluded that Ida's stated preference was not valid because it was "completely and wholly influenced by her father," and found that the father's litigation of custody and violations of the District of Columbia order had resulted in emotional damage to Ida. The state court found it was in Ida's best interest that her mother have total and undivided custody, with restricted visitation rights awarded to her father. The state court noted that its determination of the validity of Ida's stated preference was based upon a more extensive record than that developed in the fed-

eral district court, and held that a minor child's right of residence in the United States is subject to defeasibility by the right of the custodial parent to choose a place of residence.

On appeal in this court, Astrid Bergstrom challenges the subject matter jurisdiction of the federal district court, and asserts that the district court erred in holding that Ida has a constitutional right to remain in this country. She also contends she was denied due process in the district court hearing.

■ The initial question before us is whether the federal district court properly assumed jurisdiction over this matter. We conclude the constitutional issue of Ida's right to remain in the United States (hereinafter the constitutional issue) was not ripe for decision, and that the district court should have dismissed Ida's complaint.[1]

The court-created ripeness doctrine is drawn from constitutional limitations of article III on judicial power as well as discretionary reasons of policy for refusing to exercise jurisdiction. C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 3532 at 237–38 (1975); *see Regional Rail Reorganization Act Cases*, 419 U.S. 102, 138, 95 S.Ct. 335, 355, 42 L.Ed.2d 320 (1974). It embodies a policy under which courts avoid passing upon constitutional questions in advance of the strictest necessity for deciding them. *See id; Poe v. Ullman*, 367 U.S. 497, 502–03, 81 S.Ct. 1752, 1755, 6 L.Ed.2d 989 (1961) (plurality opinion); *Rescue Army v. Municipal Court*, 331 U.S. 549, 568–69, 67 S.Ct. 1409, 1419, 91 L.Ed. 1666 (1947); *Ashwander v. T. V. A.*, 297 U.S. 288, 346, 56 S.Ct. 466, 482, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).[2]

---

1. Appellant Astrid Bergstrom argues the district court should have abstained from deciding the constitutional question, relying upon *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Because we rest our decision upon the ripeness doctrine, which we may raise *sua sponte* at any stage in the proceedings, *see United States v. Gotcher*, 604 F.2d 69, 72 (10th Cir. 1979); 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedures: Jurisdiction § 3532 at 241 (1975 & Supp. 1980), we do not reach the abstention question. We

note, however, that this case does not appear to fit within any of the three types of abstention recently set forth in *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In view of our ultimate disposition of this matter we do not address the due process issue.

2. In *Anti-Facist Comm. v. McGrath*, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951), Mr. Justice Frankfurter observed in his concurring opinion that this policy "reflects the tradition that courts, having final power, can exercise it

■ In this case, when the district court entertained Ida's petition, there was no necessity to reach the constitutional issue. Ida's contention, that she now wishes to exercise her right to remain in the United States with her father, is primarily a matter of changed circumstances, necessitating reexamination of the custody decree in light of the alleged change in circumstances. This determination requires a consideration of factual issues relating directly to resolution of the custody dispute, such as Ida's capacity to assert a custodial preference and the weight her preference deserves to be given. These issues, along with the overall custody questions governing the particular circumstances of the parties, must be reached before any constitutional question should be considered ripe for decision.[3]

■ Reexamination of custody arrangements is a matter which belongs exclusively in state court; domestic relations disputes have been traditionally subject to exclusive state jurisdiction. *See Popovici v. Agler*, 280 U.S. 379, 50 S.Ct. 154, 74 L.Ed. 489 (1930); *Overman v. United States*, 563 F.2d 1287, 1290 (8th Cir. 1977). Where a constitutional issue arises out of a custody dispute, and the initial determination involves a reexamination of the custody arrangement, the proper course is to dismiss the case and remand to the state court. *See e. g., Hernstadt v. Hernstadt*, 373 F.2d 316 (2d Cir. 1967). In *Hernstadt* the court stated:

Since the very early dicta *In re Burrus*, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890), it has been uniformly held that federal courts do not adjudicate cases involving the custody of minors . . . .

Appellant seeks to avoid the impact of this sound and long-standing rule by raising a constitutional claim of full faith and credit to the Connecticut decree. When a pure question of constitutional law is presented, this court has suggested that the District Court may assume jurisdiction even if the question arises out of a domestic relations dispute . . . . .

. . . . . .

[This rule] clearly cannot be applied where the District Court could become enmeshed in factual disputes. . . . [I]t is just this reexamination [of the original decree] in custody matters which is barred from the federal courts by *In re Burrus*, supra.

*Id.* at 317–18 (citations and footnotes omitted).

*Compare Hernstadt* with *Alsager v. District Court*, 518 F.2d 1160, 1164 (8th Cir. 1975) and *Overman v. United States*, 563 F.2d 1287 (8th Cir. 1977).[4] Since the primary issue is whether changed circumstances warrant modification of the custody arrangement, the constitutional question was obviously not presented in the posture of strict necessity. Under the circumstances,

---

most wisely by restricting themselves to situations in which decision is necessary. In part, it is founded on the practical wisdom of not coming prematurely or needlessly in conflict with the executive or legislature." *Id.* at 155, 71 S.Ct. at 639–640. "These considerations press with special urgency in cases challenging . . state judicial action as repugnant to the Constitution." *Poe v. Ullman*, 367 U.S. at 503, 81 S.Ct. at 1756.

**3.** At the time the federal district court assumed jurisdiction over the constitutional question, it was clear to it that the alleged change of circumstances presented a custody question:

The threshold question is going to be whether in the opinion of the psychologist or psychiatrist she [Ida] is able to express an independent opinion, . . . whether *that opinion warrants any change in the present custody*

*arrangement.* The issue recited by Mr. Nodland [Ida's attorney] that this plaintiff has an absolute constitutional right to enjoy residence in the United States of America, I see the issue, but I don't grapple with it yet. My approach right now is that she has an absolute right to have her entitlement to residency in the United States of America considered, but that special circumstances may well require that she reside outside of the United States of America for her welfare. (Emphasis added).

**4.** Assuming custody would have been granted to the father by the state court, the need for deciding whether Ida has an independent constitutional right to remain in this country would have been obviated.

the district court should have declined to exercise jurisdiction.[5]

Since the time of the district court's injunction, this entire matter has been litigated in the North Dakota district court. An appeal from that decision is presently pending in the North Dakota Supreme Court.[6] Unlike the record adduced in the federal district court hearing,[7] the state court record was extensively developed and complete: both parents, as well as Ida, appeared and were represented by counsel; the parties presented witnesses who testified and were cross-examined; and the state court judge personally interviewed Ida.

In view of the nature of the issues involved, and the pendency of the proceedings in the North Dakota Supreme Court, we conclude the constitutional issue is still not sufficiently ripe for adjudication. The parties will suffer little if any hardship in being required to litigate the custody issue exclusively in state court.[8]

Accordingly, the district court opinion is hereby vacated. The cause is remanded to the district court with directions to dismiss.

5. The district court's determination of the constitutional issue was likewise premature because at that time Ida had not requested the state court to modify the custody order in light of her desire to stay in the United States. As a matter of comity, the issue should have been presented first to the state courts for a review of the custody arrangements in light of these circumstances. *Until Ida had done so, and until the matter had been finally decided by the state court, it was not sufficiently ripe. See Rhodes v. Laurino,* 601 F.2d 1239 (2d Cir. 1979); *Mendez v. Heller,* 530 F.2d 457, 461 (2d Cir. 1976) (Oakes, J., concurring); *Green v. Truman,* 459 F.Supp. 342, 346–47 (D.Mass. 1978); *cf. Paine v. Baker,* 595 F.2d 197 (4th Cir. 1979).

6. In a thoughtful and sensitive opinion, the North Dakota Supreme Court ordered the judgment of the state district court stayed pending the appeals in state and federal court. It did so in Ida's best interests, in order to avoid yet another "precipitous change" in custody.

7. The hearing held in the federal district court was in the nature of an ex parte hearing. Notice of the October 1 hearing date was not mailed to Astrid Bergstrom in Norway until September 20. She did not appear, although she was represented by counsel. The court-appointed psychiatrist, upon whose opinion the district court relied exclusively, did not testify and was not subjected to cross-examination. There was no testimony received from witnesses, nor from Ida.

8. In the event constitutional issues are passed upon by the Supreme Court of North Dakota, either party may thereafter petition the United States Supreme Court for a writ of certiorari to review the constitutional questions.