Alan BERGSTROM, Plaintiff
and Appellant,

v.

Astrid BERGSTROM and Ida Bergstrom,
a minor child, by her Guardian Ad Li-
tem, Cameron L. Clemens, Defendants
and Appellees.

Civ. No. 9556–A.

Supreme Court of North Dakota.

July 28, 1980.

As Amended Sept. 2, 1980.

Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, for plaintiff and appellant; argued by Irvin B. Nodland, Bismarck.

Chapman & Chapman, Bismarck, for defendants and appellees; argued by Daniel J. Chapman, Bismarck.

PEDERSON, Justice.

This case is a continuance, and we hope it is the final resolution, of the custody dispute over Ida Marie Bergstrom (Ida) by her parents, Alan H. Bergstrom (Alan) and Astrid M. Bergstrom (Astrid). It comes to us on appeal by Alan from the Morton County District Court's decision that Ida's best interests require that Astrid have total custody of Ida with limited, supervised visitation by Alan, and with no restriction on Astrid's right to choose Ida's place of residence, including a residence outside of the United States. We reverse and reinstate the prior decree of the Superior Court of Washington, D. C., awarding split custody to Astrid and Alan, conditioned, however:

(1) That because it is in Ida's best interest in this case that she be allowed to remain in the United States, Astrid must maintain a residence for Ida in the United States during this time, and

(2) That because the recommendations of expert witnesses on both sides dictate that it is in Ida's best interests to receive professional help in the form of therapy or counseling, both parents' right to custody is conditioned upon their providing this professional help for her. If they refuse, con-

sideration should be given by the trial court for placing Ida in the care and custody of the appropriate social services agency to see that this therapy is provided.

We remand with instructions to the court to prepare an appropriate order including detailed directions (which were not laid out in the original decree and seemed to be a constant source of problems) as to times, method of pickup and delivery, etc., of visitation periods for the noncustodial parent, to avoid further conflicts between the parties and trauma for the child.

We summarize events to date.

Alan and Astrid were married in 1970 while Alan was in the employ of the Foreign Service. At that time Astrid was a Norwegian citizen and she later became a naturalized American citizen. Ida, their only child, was born in Ethiopia in 1971.

On February 15, 1978, Alan and Astrid were first granted a legal separation after a long and bitter trial. The court found that "both parties emerged . . . as ordinary decent people of good character" and that, "with either parent, the Court is convinced the child will receive loving care, a good education, and live in a pleasant atmosphere with affectionate family ties." Custody of Ida was awarded to Astrid during the school year whether or not Astrid's residence be Norway or the United States, and to Alan during the summer months. Visitation rights by the noncustodial parent were to be established between the parties. The Bergstroms were subsequently divorced February 1, 1979, with the custody arrangements remaining basically the same.

Following the separation, Astrid and Ida moved to Oslo, Norway, where Ida completed the remaining school year in an American school. That summer Ida was returned to the United States to live with her father. During this time Alan filed an action on behalf of Ida in the Burleigh County District Court requesting the court to determine custody and visitation rights. The action was dismissed for failure to satisfy the jurisdictional requirements of the Uniform Child Custody Jurisdiction Act, Chapter 14–14, NDCC. Alan's request for a stay

pending appeal to the North Dakota Supreme Court was denied. *Bergstrom v. Bergstrom*, 271 N.W.2d 546 (N.D.1978). Suit was also filed in Federal District Court for an order prohibiting her removal from the United States. The order was denied (unpublished). Ida returned to Norway.

The next summer, 1979, while Ida was again with her father in North Dakota, an action was commenced in Federal District Court on Ida's behalf by a guardian ad litem, Cameron L. Clemens. The complaint sought injunctive relief prohibiting her removal from the United States by any party on the grounds that Ida's removal violates her right as a citizen to live in this country, and denies her the privileges and immunities enjoyed by United States citizens.

The Federal District Court held that Ida was capable of intelligently exercising her right as a citizen to remain in the United States, and that her removal would deprive her of liberty without due process of law. The court entered an order restraining her removal from the United States. *Bergstrom v. Bergstrom*, 478 F.Supp. 434 (D.N.D. 1979). On appeal to the Eighth Circuit, the Court of Appeals reversed and held that the constitutional issue on Ida's right to remain in the United States was not ripe for consideration by a federal court.

"Since the primary issue is whether changed circumstances warrant modification of the custody arrangement, the constitutional question was obviously not presented in the posture of strict necessity. Under the circumstances, the [federal] district court should have declined to exercise jurisdiction." *Bergstrom v. Bergstrom*, 623 F.2d 517, (8th Cir. 1980).

After the Federal District Court decision was rendered, but before the Eighth Circuit opinion was issued, a custody action was instituted in the Morton County District Court by Alan Bergstrom. The Morton County court held that it had jurisdiction to hear the case and the matter was tried in December, 1979. Both Alan and Astrid presented expert witnesses to testify as to Ida's emotional and mental state and her

best interests. Additionally, Ida was personally interviewed by the trial judge in chambers. Briefly, the court found it was in Ida's best interest that Astrid have total and undivided custody, with restricted, supervised visitation rights for Alan. Further, the court held that "any right the child has to live in the United States is subject to the right of the custodial parent to choose their place of residence, including a residence outside of the United States."

Immediately after the issuance of the order, Alan filed a notice of appeal to this court[1] and requested a stay pending appeal. The district court denied the request and Alan petitioned this court to stay the order. We granted the stay and ordered that Ida remain in Alan's custody pending the decision of the appeal to this court (and the appeal to the Eighth Circuit Court of Appeals which had not been decided at that point), inasmuch as Ida's constant shifting of custody and surroundings was not in her best interests. *Bergstrom v. Bergstrom*, 291 N.W.2d 262 (N.D.1980).

In reviewing the Morton County District Court decision, we note that much confusion existed over what was the appropriate test the district court should use to decide whether or not the facts warrant a change of custody. During the trial, the district court judge stated, "I am only concerned what the status of this child is now as opposed to what it was when the decree was entered, that is, *a change in circumstances*, and other evidence that the parties wish to—that Mr. Nodland [Alan's counsel] may wish to present to show the best interests of the child." (Emphasis added.) However, after advising Alan's counsel to present evidence of changed circumstances, the judge stated in his appendix to the judgment:

"Father's counsel attempted during the course of the hearing to justify a modification of the Superior Court decree based upon the theory of 'changed circumstanc-

es.' Nowhere in Title 14 is such a requirement or test described. The only test is the child's *present* best interest, since the original decree is already conclusive as to such best interest. Section 14–14–14, NDCC."

■ "Changed circumstances" is a judicially created concept this court has recognized for many years. It has been described as follows:

"A party seeking modification of a divorce decree awarding custody of a minor child must show a change of circumstances or new facts which were unknown to the moving party at the time the decree was entered." *Vetter v. Vetter*, 267 N.W.2d 790, 792 (N.D.1978).

The need for this showing of changed circumstances is obvious: the original decree is conclusive as to all issues of law and fact (§ 14–14–12, NDCC), and the court should not substitute its judgment as to what is in the best interests of the child. For purposes of finality, a prior decree should not be modified without a showing of a significant need for doing so.

■ After finding that there has been a change of circumstances, then the court must decide, based on these changes, that it is in the best interests of the child to modify the decree. *Jordana v. Corley*, 220 N.W.2d 515 (N.D.1974). A finding by the district court as to the best interests of the child is dealt with on appeal as a finding of fact, and a review of that fact is limited to a determination of whether or not it is clearly erroneous under Rule 52(a), N.D.R. Civ.P. Furthermore, a custody award may be set aside if we are left with a definite and firm conviction that a mistake has been made. *Gross v. Gross*, 287 N.W.2d 457 (N.D.1979).

■ The district court apparently believed that Alan had not made a sufficient showing of changed circumstances to justi-

1. Alan's counsel made an obvious error in that his notice of appeal states it is from the "Order entered in the District Court." This fact was pointed out to counsel in *Bergstrom v. Bergstrom*, 291 N.W.2d 262 (N.D.1980), at fn. 3, p.

264. We assume counsel intended his notice to state that it is from the district court judgment entered February 14, 1980. See §§ 28–27–01 and 28–27–02, NDCC.

fy granting his request to modify the prior decree so that he would be awarded total custody of Ida. We agree. However, the district court proceeded to find, without a showing of changed circumstances, that it would be in Ida's best interests to modify the prior decree, giving Astrid total custody of Ida with very limited visitation by Alan. Pursuant to Rule 52(a), N.D.R.Civ.P, we find that after viewing the record as a whole, we are left with a definite and firm conviction that a mistake has been made. We reverse, and order that the prior decree of the Superior Court of Washington, D. C., awarding split custody be reinstated.

Both Alan and Astrid presented expert witnesses to testify as to Ida's mental state and her best interests. The district court found that the testimony of the three experts Alan presented was entitled to no weight because of either bias, incomplete data, or lack of experience in dealing with children. Similarly, the court found that the testimony of each of Alan's lay witnesses was discounted as being biased. The testimony of Astrid's expert witness, on the other hand, was found to be credible and such testimony was accepted by the court.

■ By making these findings as to credibility so as to discount every one of Alan's witnesses, the trial court has, in essence, attempted to "sew up" Alan's chances on appeal by making it very difficult for us, as a reviewing court, to find these facts clearly erroneous. This type of finding cannot be used as a means to tie a reviewing court's hands so that it is impossible for the court to find error. See Carter and Wagner, "Findings of Fact," 1 San Diego L.Rev. 13 (1964).

■ In the original decree, the court found that both Alan and Astrid were fit parents and, on the basis of Ida's best interests, granted split custody so Ida could continue to nurture a strong relationship with both her mother and father:

"Currently the child's major attachment is to the mother with a more peripheral yet important feeling of security derived from her relationship with her father. Over the succeeding years, the young girl's closeness of relationship with her mother will continue to be of paramount importance; but there must also be provision for continued involvement and contact with the father since such are likewise necessary for the development and well-being of the child."

In modifying this decree to award total custody to Astrid with very limited visitation for Alan, the district court has, in practical effect, ruled that Ida will no longer be able to maintain any type of relationship with her father. The modified decree provides for visitation by Alan as follows:

"(a) Visitation by the father on the second Saturday and Sunday of each month, commencing at 8:30 a. m. until 8:30 p. m. Saturday and 8:30 a. m. until 8:30 p. m. on Sunday.

"(b) That this visitation shall take place in a locality and place to be selected by the mother.

✷"(c) That at all times during such visitation, a third person must be present with the father, such third person to be selected by the mother.

"(d) That the mother has the right to choose the place of residence for herself and the child and the right to remove the child from the United States to remain with her at a place of residence of her choosing."

We take judicial notice of the fact that Astrid intends to reside in Norway and that transatlantic flights are very expensive. By allowing Alan one brief visit a month in a locale to be selected by Astrid (presumably Norway), practicality dictates that Alan will seldom, if ever, see Ida. Futhermore, when he does see her, there will be a third person present selected by Astrid. We cannot find evidence in the record to support a finding that it is in Ida's best interests to lose continued involvement and contact with her father.

Alan's witnesses testified that Ida has a strong, primary attachment to her father. Even Astrid's expert did not state that it is in Ida's best interests to deny Alan contact with her.

"I certainly agree that it's important for Ida to maintain and have a relationship with her father. I think everybody recognizes that there are certain pragmatic difficulties. I was not uncomfortable with the arrangements that were made through the recommendation of the Superior Court."

As to the testimony of Ida's mental state and best interests, Alan's expert witnesses stated basically that Ida feels a greater sense of belonging with her father, speaks happily of North Dakota but not Norway, and states a preference for living here. Astrid's expert witness stated he did not believe a child's preference should even be asked and, if given, should not be a deciding factor, and that he believed Ida had withdrawn from both her parents and it would be difficult to determine who Ida had a major attachment to. It is incredible to us that based on this evidence, the district court could find that it is in Ida's best interests to place total custody of Ida with her mother and allow Alan such limited visitation rights.

After viewing the record as a whole, we find that a mistake has been made. We reverse, and order that the prior decree awarding split custody be reinstated subject to the condition:

that because the recommendations of expert witnesses on both sides dictate that it is in Ida's best interests to receive professional help in the form of therapy, we condition both parents' right to custody upon their providing this professional help.

If either party refuses, the trial court should consider placing Ida in the care and custody of the appropriate social services agency to see that this therapy is provided.

Having decided that the prior decree awarding custody is to be reinstated, and in view of Astrid's desire to reside in Norway with Ida, we must address the issue of whether or not Ida, as a citizen of the United States, has a constitutional right protected by the Fourteenth and Fifth Amendments to remain in the United States.

Although the Supreme Court has not defined "the totality of the relationship of the juvenile and the state," *In re Gault*, 387 U.S. 1, 13, 87 S.Ct. 1428, 1436, 18 L.Ed.2d 527 (1967), it has recognized that juveniles do have constitutional rights.

"Minors, as well as adults, are protected by the Constitution and possess constitutional rights." *Planned Parenthood of Central Missouri v. Danford*, 428 U.S. 52, 74, 96 S.Ct. 2831, 2843, 49 L.Ed.2d 788 (1976).

"[W]hatever may be their precise impact, neither the Fourteenth Amendment nor the Bill of Rights is for adults alone." *In re Gault, supra*, 387 U.S., at 13, 87 S.Ct., at 1436.

"Thus minors are entitled to constitutional protection for freedom of speech, *Tinker v. Des Moines School Dist.*, 393 U.S. 503, [89 S.Ct. 733, 21 L.Ed.2d 731] (1969); *West Virginia Board of Education v. Barnette*, 319 U.S. 624, [63 S.Ct. 1178, 87 L.Ed. 1628] (1943); equal protection against racial discrimination, *Brown v. Board of Education*, 347 U.S. 483, [74 S.Ct. 686, 98 L.Ed. 873] (1954); due process in civil contexts, *Goss v. Lopez*, 419 U.S. 565, [95 S.Ct. 729, 42 L.Ed.2d 725] (1975); . . . ." *Carey v. Population Service International*, 431 U.S. 678, 692, n. 14, 97 S.Ct. 2010, 2020, n. 14, 52 L.Ed.2d 675 (1977).

There is some support for Ida's assertion of a constitutional right as a citizen to remain in the United States in *Acosta v. Gaffney*, 558 F.2d 1153 (3d Cir. 1977). In *Acosta*, the plaintiffs were citizens of Columbia who entered the United States on visitors' visas and overstayed the time period allowed. During this period they had a baby [Lina] and were subsequently apprehended by the immigration authorities. To avoid deportation, the plaintiffs filed suit in federal court alleging that the de facto deportation of the citizen–child, Lina, which would necessarily result upon the deportation of her parents, was an unconstitutional deprivation of her rights and privileges as a native–born citizen of the United States. The court held that the infant was

not entitled to a stay of her parents' deportation order on the ground that the order would deny her right to remain in the United States. However, the court apparently based its decision on the fact that Lina was an infant below the age of discretion and, as such, was unable to exercise her right to choose her place of residence.

> "The constitutional right upon which Lina relies is somewhat broader than she describes it. It is the fundamental right of an American citizen to reside wherever he wishes, whether in the United States or abroad, and to engage in the consequent travel. [Citations omitted.] It is the right to exercise a choice of residence, not an obligation to remain in one's native country whether one so desires or not, as is required in some totalitarian countries. In the case of an infant below the age of discretion the right is purely theoretical, however, since the infant is incapable of exercising it. . . .

> . . . . .

> "The right of an American citizen to fix and change his residence is a continuing one which he enjoys throughout his life. Thus while today Lina Acosta, an infant twenty-two months of age, doubtless desires merely to be where she can enjoy the care and affection of her parents, whether in the United States or Columbia, *she will as she grows older and reaches years of discretion be entitled to decide for herself where she wants to live and as an American citizen she may then, if she so chooses, return to the United States to live. . . .* " [Emphasis added.] 558 F.2d at 1157–8.[2]

This reasoning might invite the conclusion that a citizen–child who is able to

intelligently exercise a choice of residence has a constitutional right as a citizen to remain in the United States.[3]

■ In the instant case, the district court found the following as to Ida's intelligence and desire to remain in the United States.

> "10. She has verbally stated a preference to live in the United States and with her father.

> "11. The child has reached the age of reason and is an intelligent child."

In spite of these facts, the district court judge also found that Ida's stated preference was entitled to no weight as it was "wholly influenced by her father." Again, this is an instance where, after viewing the record as a whole, we are left with a firm and definite conviction that a mistake has been made.

The expert witnesses on both sides were able to agree on one point: that Ida is an intelligent child, above average for her age. Further, Ida has had a rather unusual background in that she was born in Ethiopia and lived in several other foreign countries with her parents while her father was in the employ of the Foreign Service. She has had the opportunity to compare life in Norway and the United States as she has lived in both countries since her parents' separation. Thus, to ask her to state a preference as to choice of residence does not call upon her to hypothesize what life would be like in a foreign country.

■ We do not believe Ida's age is a controlling factor in determining whether or not she can intelligently exercise a choice of residence. We have held in North Dakota that a court, in determining custody, may consider the wishes of a child where

---

**2.** See also, *Lopez v. Franklin*, 427 F.Supp. 345, 349 (E.D.Mich.1977): "The Court in *Acosta* correctly characterizes one important right of citizenship as 'the right to live in the United States for as long as one sees fit.' However the necessary implication of that statement is that the citizen is the *only* one who can assert this right. . . . "

**3.** We do not mean to assert that in deportation cases, this right of the citizen–child to remain in the United States grants to the alien–parents

any relief from deportation. In *Lee v. Immigration and Naturalization Service*, 550 F.2d 554 (1977), the Ninth Circuit Court of Appeals held that alien–parents cannot use the citizenship of their child to prevent their own deportation. See also, *Mamanee v. Immigration & Naturalization Serv.*, 566 F.2d 1103 (9th Cir. 1977), deportation of alien parents is not an unconstitutional de facto deportation of the citizen–child; *Rubio de Cachu v. Immigration & Naturalization Serv.*, 568 F.2d 625 (9th Cir. 1977).

the child has reached the age of discretion, *McKay v. Mitzel*, 137 N.W.2d 792 (N.D. 1965), and that there is no exact age which gives a child capacity to make a choice. "It depends on the extent of mental development." *Guldeman v. Heller*, 151 N.W.2d 436, 440 (N.D.1967). In *Guldeman*, the court said a nine–year–old's preference was entitled to some consideration.

Contrary to the district court's findings that Ida's stated preference as to residence was entitled to no weight, the Federal District Court found that "Ida is of sufficient age, discretion and intelligence to exercise an intelligent preference apart from the preference of either her mother or father; that preference being to remain in the United States and not to return to Norway." After viewing the record as a whole, including Ida's interview with the trial judge in chambers, we agree.

We hold that the view and preference of a citizen–child who is capable of intelligently exercising a choice of residence is a significant factor to be considered in determining the best interests of the child, whether or not that child has a constitutional right as a citizen to remain in the United States. To enforce the portion of the custody award of the Superior Court of Washington, D. C., permitting Astrid to take Ida to Norway, in the light of Ida's expressed preference, seems contrary to her best interest. Having so concluded, we need not decide whether or not Ida has a constitutional right to remain in the United States. Accordingly, in view of Ida's best interests, Astrid's right to custody during the school year is conditional upon her maintaining a residence in the United States during this time.

It is unnecessary to rule on Astrid's motion to take Ida to Washington for a visitation period this summer.

As a final matter, we wish to comment briefly on the difficulty this type of custody case presents to the court. Each parent, in this case, has displayed a diminished capacity to be helpful to Ida. Communication with her has not been forthright and sup-portive. They have not been able to separate their own needs from the needs and best interests of Ida. We are concerned that Ida, as is often the case of children caught in the middle of a custody dispute, will attempt to rescue the depressed, unhappy parent. As we stated recently in *Lapp v. Lapp*, 293 N.W.2d 121, 130 (N.D. 1980):

"There are no winners in child custody battles, nor are there any painless solutions. Divorced parents must recognize that the disturbing situation was brought about by them. They must try to cooperate, deal with the vagaries of post–divorce life, and attempt to make the custody arrangement work in order to safeguard their child's, not to mention their own, physical, mental, emotional, and psychological well–being. All due consideration must be given to the child's developmental needs. Once the child of a divorce becomes the focus of conflict between parents, many irrational negative attitudes will begin to find expression and the ultimate loser will surely include the innocent child."

We hope, for Ida's sake and need for stability, this matter is laid to rest. We assume Mr. Nodland was sincere in his comment to this court that if Astrid maintains a residence in the United States while she has custody of Ida, Alan will find no cause to complain.

The judgment is reversed and the case is remanded for such action as may be necessary to comply herewith. There will be no costs awarded on this appeal.

ERICKSTAD, C. J., and VANDE WALLE and PAULSON, JJ., concur.

SAND, Justice, concurring specially and dissenting.

I concur in many of the principles of law announced in the majority opinion, except as noted herein.

The majority opinion states that the constitutional question need not be decided because the dispute or issue is resolved on other grounds. Nevertheless, the opinion

discussed some phase of this issue and seems to bolster its conclusion as if the child's preference were the equivalent of a constitutional right, which prompts me to make some observations regarding the child's constitutional right in this case.

The resolution of the issue whether or not a United States citizen child, whose parents are divorced, has a constitutional right to remain in the United States with one parent or live in another country with the other parent is not an end to the complex problem between parent and child. A person, whether an adult or a child, possesses certain constitutional rights. *In re Gault*, 387 U.S. 1, 13, 87 S.Ct. 1428, 1436, 18 L.Ed.2d 527 (1967). This constitutional right is no greater or more absolute than the rights guaranteed under the First Amendment, for which see 16 Am.Jur.2d *Constitutional Law* § 506, p. 341. The First Amendment rights between individuals, or between individuals and the government, need to be weighed and balanced. 16 Am. Jur.2d, *supra*.

Similarly, a complete resolution of the child's constitutional right would have to recognize a bundle of rights, obligations, and privileges of the parents as well as other factors which need to be balanced, weighed, considered and resolved. One of these factors involves finances. As an example and to put it bluntly, the constitutional right to travel in itself does not include the necessary finances to accomplish the travel. The magnitude of the financial matter can best be illustrated or recognized where both parents for valid reasons, such as employment, etc., had to, or elected to, live in another country for an extended period of time. In the instant case the record is meager regarding the finances needed to carry out the edict of the court or the capabilities of the parents under such arrangement.

Section 14–09–06.2, North Dakota Century Code, states that:

"For the purpose of custody, the best interests and welfare of the child shall be determined by the court's consideration and evaluation of all factors affecting the best interests and welfare of the child. These factors include all of the following when applicable."

This section then sets forth various items or factors from 1 through 10 which may be taken into consideration in deciding custody of children between divorced parents. In the absence of any specific provision to the contrary, it is logical to assume that all of these items or factors may be introduced at the hearing for consideration in the record under our adversary system in a manner comparable to the introduction or production of any evidence. This contemplates that the evidence be presented under oath and subject to cross–examination.

Section 14–09–06.2(9), NDCC, states:

"The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference."

It does not contain any language suggesting that the evidence establishing the preference is or should not be subject to the ordinary rules of evidence and procedure.[1]

---

1. 67A C.J.S. *Parent & Child* § 36 "Evidence," page 268:

"Although precise rules of evidence are somewhat relaxed in custody proceedings where the welfare of children is involved, when the issue of custody is contested, the interest of the parties requires that the facts be shown by competent evidence, and this should be accomplished by the substantial observance of customary rules of evidence."

The same authority, in § 38b "Examination of Child," page 284 states:

"Moreover, where parental consent is given, a judge's private examination of the child concerned is proper, and, in fact, confidential interviews between court and child are encouraged; and it is held that parental consent in such an interview is not always necessary. While counsel, at least, ought to be present at a private interview, the judge has the discretion to interview the child privately without the presence of counsel. Under some circumstances, private interviews have been deemed improper. Unless there is a waiver by the parties, a record of a private interview should be made, and, immediately after the interview, its contents should be made known to the parties and counsel in the proceedings."

Nor have we developed any court rule to the contrary even though the child's preference was asked in previous cases. See *Jordana v. Corley*, 220 N.W.2d 515 (N.D. 1974), and special concurring opinion by Judge Vogel; [2] *Moran v. Moran*, 200 N.W.2d 263, 268, (N.D. 1972); *McKay v. Mitzel*, 137 N.W.2d 792 (N.D. 1965); *Ex parte Sidle*, 31 N.D. 405, 154 N.W. 277 (1915). The record in this case discloses that the child was interviewed by the Judge in chambers with only the court reporter present. The same procedure was followed in *Jordana, supra*, without comment from this Court, except in the concurring opinion. The transcript does not indicate that counsel for the respective parents were permitted to present any questions to the Judge to be asked. I believe we are all agreed that the best interests of the child are the prevailing factors to be considered.

As to a child's wishes as a factor in awarding custody, an excellent annotation appears in 4 A.L.R.3d 1396. The annotation contains numerous cases involving children of different ages and what should be considered in determining the preference of a child. The annotation also contains cases where the preference was followed and where the preference was not followed.

The Legislature, in enacting § 14–09–06.-2, NDCC, merely provided that the child's preference may be considered. It did not require that the preference be obtained. I have reservations regarding the wisdom of subjecting a child to this additional trauma in an already traumatic situation. I believe a child, in its best interest, should be given an opportunity to decline from stating any preference and at the slightest hint that the child does not wish to state a preference any further proceedings in that direction should promptly cease. Irreparable injury may result to the parent and child relationship where the child is asked to state its preference. *See*, special concurring opinion by Justice Vogel in *Jordana, supra*. My reservations are stronger where the child is asked to state its preference as distinguished from a situation where the child has already voluntarily expressed its preference. Even in those cases, caution must be exercised in asking a child to state its preference. Furthermore, what assurances are there that within a short period of time the preference will not change? In any event, where the child states a preference every effort should be made to determine if the child's preference is or was the result of undue influence by or through either parent. The child, during the interview, initially indicated a reluctance to express a preference.

On another phase of this case, the court alluded to the difficulty of putting everything together from the earlier divorce trial and the task of reading the available transcript, if any. The court obviously was concerned about the existing conditions and circumstances at the time of the divorce and if there were any substantive changes since then to warrant a change of custody.

---

*Raper v. Berrier*, 97 S.E.2d 782 (Sup.Ct. N.C. 1957), stated the constitution requires an open hearing. *Commonwealth ex rel. Scott v. Rider*, 248 Pa.Super. 383, 375 A.2d 149 (1977), case was remanded for evidentiary hearing. *Flaherty v. Smith*, 87 Mich.App. 561, 274 N.W.2d 72 (1979), case was remanded for evidentiary hearing even though the trial judge had concluded it was improper. See Annotation, 99 A.L.R.2d 955, Custody of Child–Private Interview.

2. "I do not believe it is beneficial for courts to ask children what their preferences are as to custody. Of course, courts cannot prevent (except by persuasion) the parties from calling the children as witnesses. If the parties insist, I agree that it is better for the court to make inquiries in chambers, preferably in the presence of counsel. I take it that the commenda-

tion of the trial court in the majority opinion refers to this procedure, and not to the practice of asking the children for their preferences. It would be better, I believe, to leave the children out of the matter entirely. In the first place, it must create a feeling of guilt in any child to have to disappoint one of two parents he loves by expressing a preference for the other. Psychological problems can be expected whether the child makes the choice or refuses to do so. In the second place, if the child knows (and he usually does) that placements are not final and that he may be asked in the future to express a preference, he may consciously or unconsciously use that knowledge to extort favors from one or both parents–not a cheerful harbinger of a normal relationship with either parent."

The changes, if any, were not established. The parties (parents) seemed to have avoided this issue.

The record discloses that the foregoing concepts were not followed which indicates to me that the case should be affirmed or remanded for further proceedings. In view of this, I am not in a position to agree that the trial court made a mistake in not giving preference to the child's wishes. The majority opinion does not state, and it is not apparent to me, on what basis the conclusion was made that the trial court made a mistake in not accepting the child's preference. All we have is a cold transcript. Also, for the reasons stated earlier herein, I do not deem it advisable to excerpt any of the child's statements made in chambers in the presence of only the court and the reporter.