Ida Marie BERGSTROM, a minor child, By and Through her Guardian ad Litem, Alan H. Bergstrom, Petitioner,

v.

Astrid Maria BERGSTROM, Respondent.

Civ. No. 9556.

Supreme Court of North Dakota.

Oct. 16, 1978.

Irvin B. Nodland and Peter S. Pantaleo, of Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, for petitioner.

Harold L. Anderson and Patrick W. Durick, of Pearce, Anderson, Thames & Durick, Bismarck, for respondent.

VandeWALLE, Justice.

A child-custody battle between Alan H. Bergstrom ("Alan") and Astrid Maria Bergstrom ("Astrid") has spawned this petition. The abstract, sterile legal issue that it presents is whether or not the district court erred in its denial of an application for a stay of execution of an order pending ap-

peal of that order to this court. We are told by petitioner's attorney, however, that our resolution of this narrow issue may determine the immediate fate of Ida Marie Bergstrom ("Ida"), the seven-year-old daughter of Alan and Astrid.

In 1970, Alan, an American citizen, and Astrid, at that time a Norwegian citizen (she became a naturalized American citizen in 1975), were married in Norway. Throughout the course of their marriage, Alan was employed by the United States Government as a foreign service officer, a position necessitating frequent world travel. In 1971, while the couple was in Ethiopia, Ida, their only child, was born. After Ida's birth, the family lived for various periods of time in Ethiopia, the Sudan, Norway, the United States, and Libya.

The couple's marriage foundered, and in September, 1977, they filed an action for divorce in the Superior Court of the District of Columbia ("Superior Court"). The Superior Court tried the matter in January, 1978. The bitterly contested trial lasted 12 days and included the testimony of 18 witnesses (three of whom were psychiatrists) and the presentation of more than 150 exhibits.

Following trial, the Superior Court granted to Astrid a separation from bed and board from Alan. The child-custody determination was, however, more troublesome for the Superior Court. The court found that, with either parent, Ida would receive loving care, a good education, a pleasant atmosphere, and an affectionate family. Nonetheless, because of the hostility between Alan and Astrid and the intention of Astrid, which she stated at trial, to return to Norway with Ida if granted custody, the court recognized that "custody arrangements calling for cooperative action will be difficult." Resolving the issue consistent with the best interests of Ida, the court ordered, in pertinent part:

> "2. That the Defendant Astrid S. Bergstrom shall have the care and custody of the Child Ida Marie Bergstrom during the entire school year. During the period of summer vacation the Plaintiff

Alan H. Bergstrom shall have the care and custody of the child. In addition, should Defendant Astrid S. Bergstrom and Plaintiff Alan H. Bergstrom reside in the same general area, whether in the United States or Norway, or wherever, mutual visitation rights shall be established by the parties encompassing at a minimum one weekend per month."

Alan appealed from the Superior Court's order; moreover, he asked that a restraining order be issued to prohibit Astrid from removing Ida from the United States pending disposition of his appeal. Subsequently, the request for a restraining order was denied; the appeal, however, is still pending before the appellate courts of the District of Columbia.

After the denial of Alan's request for a restraining order, Astrid returned with Ida to Norway. Ida entered the Oslo American School where, from what we have gleaned from the scant record before us, she performed satisfactorily.

It is at this point that the events resulting in this petition began. In early June, 1978, Alan traveled to Norway to take custody of Ida for the summer months as provided by the Superior Court's order. The parties disagree about the manner in which he removed Ida from Norway and returned with her to Washington, D.C. In any event, following a stopover of undetermined length in Washington, D.C., Alan and Ida arrived in Bismarck, North Dakota, on July 3, 1978.

Alan and Ida spent the remainder of the summer in Bismarck. On August 23, 1978, five days before Ida was to begin the third grade at the Oslo American School in Norway, Alan, as Ida's guardian ad litem, commenced an action in the district court asking, in essence, that the court assume jurisdiction over Ida "for purposes of all child custody determinations and visitation rights." So that it might consider the matter, the district court issued an ex parte order that forbade Ida's removal from the Fourth Judicial District until further order by the court.

On September 14, 1978, the district court conducted a hearing at which Alan appeared personally and through counsel as Ida's representative, and Astrid, still in Norway, appeared only through counsel. On September 18, 1978, in a memorandum opinion and order, the district court found that the jurisdictional requirements of the Uniform Child Custody Jurisdiction Act, Chapter 14–14, North Dakota Century Code, had not been satisfied and that the "best interests of [Ida] dictate[d] that the initial [Superior Court] decree awarding custody [to Astrid] should remain in effect pending final resolution of the question of custody, . . ." Thus the district court dismissed the action. One day later, the district court entered an addendum to its memorandum opinion and order that required Alan, as Ida's guardian ad litem, to return her to "the custody of [Astrid] or of the mother's authorized representative within ten days . . ., unless, during the interim, an order is issued by the Superior Court of Washington, D.C., providing for some other disposition."

Alan subsequently applied to the district court for an ex parte order staying execution of its two orders. The district court denied his application. Alan then petitioned this court for a stay of the orders of the district court pending appeal to this court.

As mentioned above, in denying the application for a stay pending appeal, the trial court concluded that it had no jurisdiction under the Uniform Child Custody Jurisdiction Act, Chapter 14–14, N.D.C.C., and that the best interests of Ida dictated that it should enforce the Superior Court's child-custody decree. These questions will ultimately reach us on appeal, so we do not resolve them now; rather, we confine ourselves to the narrow issue Ida's petition presents: whether or not we should grant a stay pending her appeal to us of the district court's decision.

■ This court has inherent and constitutional power to act in preservation of its jurisdiction or under Rule 62(*1*), N.D.R. Civ.P., to grant a stay pending appeal. See *In Interest [Custody] of J. O., a Child*, 250 N.W.2d 256 (N.D.1977); *Cass County Electric Cooperative, Inc. v. Wold Properties*, 253 N.W.2d 323 (N.D.1977).

In *Cass County Electric, supra*, this court adopted guidelines for a district court to utilize when addressing an application for a stay. The four criteria within these guidelines are: (a) a strong showing that the appellant is likely to succeed on appeal; (b) that unless the stay is granted, the appellant will suffer irreparable injury; (c) that no substantial harm will come to any party by reason of the issuance of the stay; and (d) that granting the stay will do no harm to the public interest. 253 N.W.2d at 326–327. The court further stated that if the district court determined that a stay should be granted, it should set forth its finding with specificity so that, if appellate consideration is requested, this court may better understand the basis of the trial court's decision. Finally, the court observed that an opinion of the district court on such an issue ordinarily will not be set aside unless the district court is found to have abused its discretion.

In *In Interest [Custody] of J. O., supra*, this court stated that a refusal to stay a lower court's order because its execution had altered the status quo would weaken our authority in child custody situations. Yet, the court noted that this consideration is not determinative and, indeed, is overshadowed by the paramount concern in custody cases for the best interests of the child. Also, consistent with *Cass County Electric, supra*, the court noted that, for the purpose of determining whether or not to grant a stay pending appeal, appreciable weight will be given to the decision of the district court.

We will apply the *Cass County Electric* guidelines to Ida's request for a stay.

Under these guidelines, the first criterion is a strong showing that the appellant is likely to succeed on appeal. We do not believe that a strong showing has been made in this instance. The grounds upon which the district court denied relief have been enunciated above. Contrary to those

**550**

grounds, Ida argues that because, at the time that the Superior Court tried this matter, Alan and Astrid were legal residents of North Dakota, the Superior Court had no authority to issue a custody decree.[1] Moreover, she urges, in essence, that although she had no significant contact with North Dakota until brought here by her father in July, 1978, pursuant to his rights under the Superior Court's custody order, Section 14–14–03, N.D.C.C., provides the district court with jurisdiction because both she and her father are legal residents of North Dakota. Finally, she asserts that irrespective of Section 14–14–03, N.D.C.C., the district court has jurisdiction to protect her best interests.

The Superior Court's order is currently under appeal in the District of Columbia. Although Ida now alleges that the court had no authority to enter a separation from bed and board because of the residency of the parties (a matter not before this court), such allegation, if proved, would not necessarily determine the issue of jurisdiction for child-custody purposes.

From the language in Ida's initial complaint, it appears that she premised the district court's jurisdiction on Section 14–14–03(1)(a)–(b), N.D.C.C.[2] The district court, however, considered these provisions and concluded that it had no jurisdiction.

▆▆ The district court construed the phrase "home state" within Section 14–14–03(1)(a), N.D.C.C., to refer not to the State of legal residence but to the State of actual physical presence. We agree. Because the district court found that Ida has not lived with her parent in this State for six months, Section 14–14–03(1)(a) did not grant jurisdiction to that court. The district court further concluded that Section 14–14–03(1)(b), N.D.C.C., must be read in conjunction with subsection 2 of Section 14–14–03, N.D.C.C., which provides:

"2. Except under subdivisions c and d of subsection 1, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination."

▆▆ The district court found that although it might be argued that Ida and her father have a significant connection with this State, i. e., legal residency, there is not available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships. Thus the district court held that, considering the short duration of the child's presence in North Dakota and her present unsettled situation, it could not be said that substantial evidence exists at this time. We cannot disagree with the district court's holding.

Apart from the above jurisdictional provisions, other sections of the Uniform Child Custody Jurisdiction Act, Chapter 14–14, N.D.C.C., militate against the district court's exercise of jurisdiction.

1. Because he submitted to the jurisdiction of the Superior Court, has appealed that court's decision to the District of Columbia appellate courts, where the appeal is pending, and acquired physical custody of Ida for the summer pursuant to the Superior Court's order, Alan is in a strange position when he argues that the courts of North Dakota, not those of the District of Columbia, have jurisdiction over this matter.

2. Section 14–14–03, N.D.C.C., provides, in part:
"1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial decree or modification decree if:
"a. This state (1) is the home state of the child at the time of commencement of the proceeding, or (2) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;
"b. It is in the best interest of the child that a court of this state assume jurisdiction because (1) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (2) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

. . . . .

■ Section 14–14–06, N.D.C.C., provides that the courts of this State shall not exercise their jurisdiction under this chapter if, at the time that a petition is filed, a proceeding concerning the custody of the child is pending in the court of another State exercising jurisdiction substantially in conformity with this chapter, unless the proceeding is stayed by the court of the other State because this State is a more appropriate forum or for other reasons. Alan's appeal from the Superior Court's child custody order is still pending in the District of Columbia appellate courts.

In *In re Custody of Rector*, 565 P.2d 950 (Colo.App.1977), the Colorado Court of Appeals, applying the Uniform Child Custody Jurisdiction Act, faced a similar situation. There, a Kansas court had awarded custody of a child to the mother. The father's appeal from that award was still pending in the Kansas courts when he petitioned a Colorado court for a change of custody. The Colorado Court of Appeals held that because it was not questioned that the Kansas court exercised jurisdiction substantially in conformity with the Uniform Act, the trial court was precluded from exercising jurisdiction by Section 14–13–104(1)(a)–(b), Colo.Rev.Stat. (1973), of the Uniform Act, codified in North Dakota as Section 14–14–03(1)(a)–(b), N.D.C.C. To reach this result, the court relied on Section 14–13–107(1), Colo.Rev.Stat. (1973), of the Uniform Act, codified in North Dakota as Section 14–14–06(1), N.D.C.C. The Colorado court said that in instances in which a court rendering a custody order initially had jurisdiction, and the proceeding is still pending in the judicial system of which that court is a part, the proper course is to request a stay from the court in which the case is pending. This procedure fulfills the intent of the Uniform Act as set forth in Section 14–14–01, N.D.C.C.

In North Dakota,

"A civil action in a district court is deemed to be pending from the time of its commencement until its final determination upon appeal or until the time for appeal has passed, unless the judgment is sooner satisfied." Sec. 28–05–10, N.D. C.C.

Because Alan has appealed from the Superior Court's order and the District of Columbia appellate courts have not made final determination of his appeal, we find that the Superior Court proceeding is still pending. Hence, under these circumstances, the district court was precluded from exercising jurisdiction.

■ Although we are informed that the District of Columbia has not adopted the Uniform Child Custody Jurisdiction Act, the limitation on action by courts of this State in Section 14–14–06, N.D.C.C., remains effective even when the State where the proceeding is pending has not adopted the Uniform Act. See *Miller v. Superior Court of Los Angeles County*, 69 Cal.App.3d 191, 138 Cal.Rptr. 123, 128, n. 1 (1977), *appeal pending* (Cal.1978). The provision includes proceedings pending in another State so long as the court in that State exercises jurisdiction substantially in conformity with the North Dakota Uniform Act. The term "state," as used in Chapter 14–14, N.D.C.C., includes the District of Columbia. Sec. 14–14–02(10), N.D.C.C. Ida has not alleged nor established that jurisdiction in the Superior Court was not substantially in conformity with jurisdiction under our Act, nor has she alleged that the parties in this case and in the matter pending in the District of Columbia did not receive reasonable notice and did not have an opportunity for a fair hearing.

■ Even if we found that Alan's appeal of the Superior Court's order was not a pending proceeding under Section 14–14–06, N.D.C.C., we would reach the same result. Section 14–14–13, N.D.C.C., provides that the courts of this State shall recognize and enforce an initial decree or modification decree of a court of another State which had assumed jurisdiction under statutory provisions substantially in accordance with the North Dakota Act or which was made under factual circumstances meeting the jurisdictional standards of that Act, so long as the decree has not been modified in accordance with jurisdictional standards

substantially similar to those of the North Dakota Act. As we have already held with regard to Section 14–14–06, N.D.C.C., the District of Columbia's failure to adopt the Uniform Child Custody Jurisdiction Act does not preclude the applicability of Section 14–14–13, N.D.C.C., to District of Columbia child-custody decrees. Furthermore, an examination of the proceedings before the Superior Court indicates that all parties appeared in what the Superior Court of the District of Columbia described as a "bitterly fought trial," wherein the real struggle concerned the custody of Ida. It is apparent that the Superior Court proceeded in a manner substantially similar to the manner in which the courts of this State would proceed under Chapter 14–14, N.D.C.C. The fact that the plaintiff disagrees with the order of the Superior Court does not alter that fact. We find, therefore, that the district court correctly recognized and enforced the Superior Court's order.

■ Ida relies on *Giddings v. Giddings*, 228 N.W.2d 915 (N.D.1975), to assert that the district court had jurisdiction to protect her best interests. There, the mother filed an ex parte motion to regain custody of her child from her former husband, the child's father. The district court enforced an Iowa court's custody order which awarded custody to the mother, without adhering to the Uniform Child Custody Jurisdiction Act, Chapter 14–14, N.D.C.C. This court reversed the district court's decision, and stated:

"In other words, we are not intending to prejudge this case but are saying that the trial court should have proceeded pursuant to the provisions of the Uniform Child Custody Act in determining whether it had jurisdiction to act and in deciding the custody issue.

"Unless a trial court is willing to permit testimony to determine the best interests of a minor child in a custody dispute, it cannot properly determine jurisdiction or custody." *Giddings v. Giddings, supra*, 228 N.W.2d at 919.

Here, contrary to what we found in *Giddings*, the district court's order abundantly demonstrates that the proceeding was held pursuant to the Uniform Child Custody Jurisdiction Act. The order also shows that, in reaching its jurisdictional decision, the district court considered evidence including the statement of psychologist who examined Ida after her arrival in North Dakota and, in light of the evidence, based its findings on the best interests of the child. Thus the district court acknowledged Ida's contention that an evaluation made by a local psychologist established that her best interests would be served if she remained in North Dakota with her father. The court concluded, however, that such an opinion did not constitute a change in circumstance or a compelling reason to change custody; instead, it was simply an opinion, contrary to the opinions expressed by the psychiatrists in the District of Columbia. The district court also considered the recommendation of the psychologist that Ida remain with her father, and noted that the recommendation was made even though the psychologist had neither seen nor interviewed her mother, as did the psychiatrists in the District of Columbia. Attaching significance to the findings of the psychiatrists in the District of Columbia, which recognized that the issue of stability is the important one, the district court stated that it is Alan who is causing the instability by his conduct and that such conduct is not in Ida's best interests. We find that the district court's determination of Ida's best interests is consistent with our mandate in *Giddings v. Giddings, supra.*

■ The second criterion from the *Cass County Electric* guidelines is a showing that unless a stay is granted, the appellant will suffer irreparable injury. Ida claims that irreparable injury will result here if this court does not grant a stay because she will be returned to her mother in Norway where the courts of this country have no jurisdiction. As the district court noted, however, the child will be returned to Norway if such return is or has been authorized by the Superior Court, the court having jurisdiction over the question of the child's custody. Ida's argument presupposes that if she is

returned to Norway, her mother will not adhere to our orders should we reverse the decision of the district court after an appeal on the merits. We are unwilling to make that presupposition at this time, although the history of the mother and father in this case indicates that they have been unable or unwilling to agree on most matters involving the divorce and the custody of the child.

The order of the Superior Court specifically recognized that Ida might be moved from the United States. Had the possibility of Ida's living in Norway with her mother not been recognized by the Superior Court, we might have been more inclined to consider a stay pending appeal. This, however, is not a case in which the mother, after being awarded custody, surreptitiously spirited the child out of the country in derogation of the father's rights, to avoid the jurisdiction of the courts in the United States.

Arguments similar to Ida's were made in *Miller v. Superior Court of Los Angeles County, supra.* There, Australian courts had divorced the parents and entered a decree giving custody of the children to the father. The father was an Australian citizen and the mother a United States citizen. After the mother brought the children to the United States, the father petitioned the Superior Court of Los Angeles County, California, pursuant to the Uniform Child Custody Jurisdiction Act, to obtain physical custody of the children. The Superior Court entered an order requiring the mother to deliver the children to the father. The mother petitioned the Court of Appeal for a writ to compel the Superior Court to vacate such order. The Court of Appeal found that the Australian court gave the mother reasonable notice and an opportunity to be heard, and therefore held that the trial court properly enforced the Australian court's order giving the father custody of the children.

In *Miller*, the California Court of Appeal stated [138 Cal.Rptr. at 127–129]:

"Patricia contends that the order of our superior court preordains the future of the children and she is left without any remedy. We disagree. There is no reason to believe that if she can demonstrate to an Australian court that the best interests of the children would be served by returning them to the United States that that court would be any less sensitive to the interests of the children than the California court.

"Although Harry is the one who affirmatively sought relief in the California court, the sanctioning of Patricia's actions by a refusal to enforce the orders of the Australian court would in effect amount to modification of the orders by the California court. . . . Such a result would be a return to the past and an open invitation to Harry to then attempt self-help, seize the children, and run to Australia.

. . . . .

"When a California court, however, is asked to enforce or modify the order of a court of *another jurisdiction*, it must be governed by the provisions of the Uniform Act. The purpose of the Act is to discourage continuing controversies over child custody and visitation in the interests of greater stability of home environment and of secure family relationships; to avoid jurisdictional competition; to deter abductions; to avoid relitigation insofar as feasible; *to promote comity between jurisdictions and to assure that litigation concerning custody takes place ordinarily in the state in which the child and his family have the closest connections.* (Civ.Code, § 5150.)[3] Inherent in the Act is a legislative determination that the interests of the children are best served by uniformity in answering the question of which jurisdiction is the proper one to decide custody matters.

"Civil Code section 5152 specifies the grounds upon which a California court may assume jurisdiction of a custody matter either initially or by way of a modification proceeding. That section further provides that except in cases of

3. A similar provision is found in Sec. 14–14–01, N.D.C.C.

emergencies and in order to protect a child from abuse or neglect or in the case where no other state would have jurisdiction, the physical presence in California of the child or of the child and one of the contestants is not alone sufficient to confer jurisdiction to decide the issue of custody.[4]

"Further, the Act provides that the courts of. this state *shall recognize and enforce* decrees of the court of another state which *has assumed* jurisdiction under circumstances or provisions similar to California law (Civ.Code, § 5162) and the courts of this state *shall not modify a* decree of another state except under circumstances which are not present here. (Civ.Code, § 5163.)[5]

"A California court *is* competent to modify a foreign decree if 'It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships.' (Civ.Code, § 5152(1)(b).)[6]

"Of course a California court is not required to exercise that jurisdiction and in view of the fact that the above quoted section appears to run contra to the purpose of the Act and to specific provisions thereof, the discretion afforded by that section should be sparingly exercised.

"Finally, Civil Code section 5172 provides: 'The general policies of this title extend to the international area. The provisions of this title relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature to custody rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons.'[7]

"Had Patricia affirmatively petitioned to have the California courts modify the May 3 order and alter .the provisions for visitation and schooling or to modify the July 28 order and restore physical custody to her, certainly under the facts it would have been a proper exercise of discretion to refuse to assume jurisdiction and to refuse such request." [Emphasis in text; footnotes ours.]

We find this language persuasive, and hold that Ida has not shown that unless a stay is granted she will suffer irreparable harm.

Because we have found that Ida has failed to satisfy the first two *Cass County Electric* guidelines for the issuance of a stay, we deem consideration of the remaining two criteria unnecessary.

In summary, we conclude that Ida has shown neither a strong likelihood of success on appeal nor irreparable harm that will develop from our failure to grant a stay. We determine that the district court correctly proceeded pursuant to the Uniform Child Custody Jurisdiction Act as set forth in Chapter 14–14, N.D.C.C. As required by this court in its decision in *Giddings*, the district court considered evidence to determine the best interests of a minor child in a custody dispute. The district court found that it did not have jurisdiction to determine custody properly, and concluded that Ida's best interests dictated that the initial decree awarding custody to the mother should remain in effect pending final resolution. Moreover, the district court found that such disposition provided Ida with an appropriate modicum of stability and security.

 We said earlier that for the purpose of determining whether to grant a stay pending appeal, appreciable weight is

---

**4.** A similar provision is found in Sec. 14–14–03, N.D.C.C.

**5.** A similar provision is found in Sec. 14–14–13, N.D.C.C.

**6.** A similar provision is found in Sec. 14–14–03(1)(b), N.D.C.C.

**7.** A similar provision is found in Sec. 14–14–23, N.D.C.C.

given to the decision of the trial court. We cannot conclude that the district court abused its discretion in denying a stay nor can we find adequate legal reasons for this court to grant a stay.[8]

The petition for stay pending appeal is denied.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.

8. Because Ida and her father are legal residents of North Dakota, with family living in North Dakota, our natural instinct might be to grant the stay pending appeal, giving Alan physical custody of Ida while they pursued the opportu- nity to prove that the trial court was in error. Such action by this court would, however, in view of the legal proceedings pending in the District of Columbia courts, violate the intent of the Uniform Child Custody Jurisdiction Act.