Carol A. BECK, Petitioner,

v.

Hon. Kirk SMITH, District Court Judge, and the District Court of the Northeast Central Judicial District, Respondents.

Civ. No. 9826.

Supreme Court of North Dakota.

Aug. 29, 1980.

Garcia & Garcia, Devils Lake, for petitioner; argued by David Garcia, Devils Lake.

Robert A. Alphson, Grand Forks, for respondents; argued by Lawrence DuBois, Grand Forks, appearance by John Lund, Senior Law Clerk.

ERICKSTAD, Chief Justice.

The petitioner, Carol A. Beck, requests this Court to exercise its original jurisdiction and to use its supervisory power over lower courts, to issue a writ of prohibition against the Grand Forks County District Court to set aside its ex parte order issued July 14, 1980. The ex parte order requires Carol to return custody of her three minor children, Dean Allen, Darrin Lee, and JoAnn Marie, to their father, Phaon A. Beck, pursuant to the terms of a Maryland custody decree dated June 6, 1975, as modified December 27, 1976. Carol also requested a temporary stay of the July 14, 1980, ex parte order pending our determination of the application for a writ which was granted by order of this Court dated July 18, 1980.

During June, 1975, the Circuit Court of St. Mary's County, Maryland, granted Phaon a decree of divorce from Carol and granted custody of their three minor children to Phaon with reasonable visitation rights for Carol. Subsequent to the divorce, Carol moved to North Dakota, and Phaon moved to Hawaii with the three children. In December, 1976, the Maryland court, by modification of its June, 1975, decree, provided, among other things, that Carol should have an annual six–week visitation period with the children during the summer months.

During June, 1980, the three children flew from Hawaii to Grand Forks to spend their annual six–week summer visitation with Carol. When Phaon flew to Grand Forks for the children at the end of their visit, he was served with a summons and complaint notifying him that Carol had filed an action in the Nelson County District Court seeking a modification of the Maryland decree to obtain custody of the three children. Phaon filed a motion to dismiss, and, after a hearing at which both Carol and Phaon were represented by counsel, the court entered an order dismissing Carol's action for lack of subject matter jurisdiction under the Uniform Child Custody Jurisdiction Act, Chapter 14–14, N.D. C.C. Carol filed an appeal from the court's

order of dismissal which is pending before this Court.[1]

On July 14, 1980, Phaon, pursuant to Section 14–14–15, N.D.C.C., filed a certified copy of the Maryland custody decree with the Clerk of the Grand Forks County District Court and also filed a motion with the Grand Forks District Court for an ex parte order to enforce the Maryland decree requiring Carol to return custody of the children to him. The court granted Phaon's motion and issued an ex parte order, dated July 14, 1980, enforcing the custody provisions of the Maryland decree.

On July 17, 1980, Carol petitioned this Court for a supervisory writ against the Grand Forks County District Court to set aside the ex parte order.

■ Section 28–27–02(7), N.D.C.C., sets forth the procedure for seeking relief from an ex parte order:

"*28–27–02. What orders reviewable.*– The following orders when made by the court may be carried to the supreme court:

\*      \*      \*      \*      \*      \*

7. An order made by the district court or judge thereof without notice is not appealable, but an order made by the district court after a hearing is had upon notice which vacates or refuses to set aside an order previously made without notice may be appealed to the supreme court when by the provisions of this chapter an appeal might have been taken from such order so made without notice, had the same been made upon notice."

Although an ex parte order is not appealable the party against whom it is issued can move the district court to vacate the ex parte order, and the court's order denying such motion may then be appealable under the terms of Section 27–28–02(7), N.D.C.C. *State ex rel. Olson v. Lynch,* 138 N.W.2d 785 (N.D.1965).

This Court in *Lynch, supra,* denied an application for a supervisory writ because the petitioner did not comply with the provisions of Section 28–27–02(7), N.D.C.C., and in so doing stated:

"Under the provisions of Section 28–27–02, sub–section 7, N.D.C.C., an ex parte order is not appealable. It remains non–appealable until such time as the judge who made the order has a chance to reconsider his decision in an adversary proceeding." 138 N.W.2d at 788

There is generally good reason to require a party to move the district court to vacate its ex parte order rather than to allow a direct appeal from the ex parte order. The motion to vacate allows the district court to hold an adversary hearing upon which it can reconsider the appropriateness of the ex parte order. If the district court denies the motion to vacate the ex parte order, its order denying the motion may then be appealable. If so, the appellate court will have the benefit of an adversarial record upon which to determine whether or not the district court acted correctly.

■ In the instant case, Carol made no motion in the district court to vacate the ex parte order. If she had made such motion and it had been denied by the trial court, the order denying the motion would have been appealable under Section 28–27–02, N.D.C.C. It would be appropriate for us to refuse to exercise our original jurisdiction as we did in the *Lynch, supra,* case because she did not follow the procedure available under Section 28–27–02(7), N.D.C.C., to obtain an appealable order. However, for reasons stated hereinafter, we accept original jurisdiction for limited purposes.

The Honorable Judge Kirk Smith, sitting as the Nelson County District Court, presided over Carol's action in Nelson County to modify the Maryland custody decree. Judge Smith, sitting as the Grand Forks County District Court, was also the judge that subsequently heard and granted Phaon's request for an ex parte order en-

---

1. The parties to the appeal have neither filed briefs nor presented oral argument as of the date of this opinion.

forcing the Maryland decree. The hearing in Carol's Nelson County action resulted in the presentment of legal arguments and evidence by both Carol and Phaon, before Judge Smith, which were pertinent to Judge Smith's determination to issue the ex parte order enforcing the Maryland custody decree. Judge Smith heard Carol's argument urging him to accept jurisdiction to modify the Maryland decree and upon finding that the Court was without jurisdiction to modify the decree, Judge Smith, in effect, determined that no justifiable reason had been presented to prevent enforcement of the Maryland decree. It would place form over substance to require Carol, under the circumstances of this case, to made a motion before the Grand Forks County District Court to vacate its ex parte order because the evidence relevant to that question had already been presented to Judge Smith in the Nelson County action.

■ The authority of this Court to issue original and remedial writs is derived from Article IV, Section 86, of the North Dakota Constitution. It is a discretionary authority which may not be invoked as a matter of right, and this Court will determine in each case whether acceptance of original jurisdiction is proper. *Burlington Northern, Inc. v. North Dakota District Court, etc.,* 264 N.W.2d 453 (N.D.1978). Under the circumstances of this case, we believe it is in the best interests of justice and of judicial economy to exercise, in a limited manner, our superintending authority in this case. Carol presented the following issues in her application for a writ of prohibition:

(1) Whether or not the Grand Forks County District Court should have abated enforcement of the Maryland decree pending the appeal from the Nelson County District Court's dismissal of Carol's action in Nelson County?

(2) Whether or not the Grand Forks County District Court erred by enforcing the Maryland custody decree with an ex parte order?

### Writ of Prohibition

■ Prior to discussing the issues raised by Carol, we shall consider the appropriateness of the specific remedy she has requested; *i.e.* writ of prohibition.

With regard to the writ of prohibition, this Court stated in *Mor–Gran–Sou Elec. Coop v. Montana–Dakota Util. Co.,* 160 N.W.2d 521 (N.D.1968):

"The writ is not a writ of right. It is an extraordinary writ, to be issued with caution, in cases of extreme necessity, and is available only when the inferior court, body or tribunal is about to act without or in excess of jurisdiction.

"It is not an appropriate writ to revoke an order already made, for its proper use is to prohibit the doing of something, not the undoing of something already done." 160 N.W.2d at 523. [Case cites omitted.]

Upon issuing the ex parte order the District Court completed the act for which Carol now seeks a writ of prohibition. Consequently, we conclude that this is not a proper case for issuance of a writ of prohibition, but that does not prevent us from granting appropriate relief. *State ex rel. Link v. Olson,* 286 N.W.2d 262 (N.D.1979). In *Olson, supra,* we stated:

"Even though we conclude here that a writ of prohibition is unavailable, we are not thereby prevented from deciding the significant issues raised in the case. Long ago we held that 'this court, in the exercise of its original jurisdiction, may frame its process as the exigencies require. *State v. Archibald,* 5 N.D. 359, 362, 66 N.W. 234.' *State v. Langer, supra,* [46 N.D. 462] 177 N.W.2d [408] at 413." 286 N.W.2d at 268.

Thus, we will examine the issues raised by Carol.

### Abatement

■ Carol asserts that the Grand Forks County District Court should have abated enforcement of the Maryland decree until a final determination has been made on her appeal from the Nelson County District Court Order dismissing her action in Nelson County. We disagree.

The rationale for abatement of a second action when a prior action has been filed in another court which can resolve the issues raised in the second action is that once a court has assumed jurisdiction it should have exclusive authority over the matters involved without interference by any other court. *Lemkuil v. Lemkuil*, 92 Nev. 423, 551 P.2d 427 (1976). In the instant case the Nelson County District Court did not assume jurisdiction, and, consequently, there was no action pending which required abatement of the enforcement of the Maryland decree.

Although the case of *Bergstrom v. Bergstrom*, 271 N.W.2d 546 (N.D.1978) did not involve an ex parte order, it has some significance to this issue. In *Bergstrom, supra*, the father filed an action in the Burleigh County District Court requesting the court to assume jurisdiction "for purposes of all child custody determinations and visitation rights" that had been determined with regard to his daughter in a decree of the superior court of the District of Columbia. The Burleigh County District Court dismissed the action for lack of jurisdiction under the Uniform Child Custody Jurisdiction Act, Chapter 14–14, N.D.C.C. The father subsequently appealed to this Court from the order of dismissal and from the order enforcing the District of Columbia decree. He also petitioned this Court for a stay of the district court's orders pending appeal to this Court. In denying the father's request for a stay pending appeal this Court determined that the district court correctly recognized and enforced the District of Columbia decree and that the order enforcing that decree should not be stayed pending the father's appeal on the order dismissing his custody action for lack of jurisdiction. We are presented with a similar situation in the instant case. Judge Smith, sitting as the Nelson County District Court, dismissed Carol's action for modification of the Maryland custody decree for lack of jurisdiction. Thereafter, Judge Smith, sitting as the Grand Forks County District Court, recognized and enforced the Maryland decree and ordered Carol to return the children to Phaon under the provisions of that decree.

The case of *Wood v. District Court in and for County of El Paso*, 181 Colo. 95, 508 P.2d 134 (1973), is also relevant to this issue. In *Wood, supra*, a couple was granted a divorce in Arapahoe County. Custody of their three children was granted to the mother, and the father received visitation rights. Upon the expiration of a visitation period, the father retained the oldest child contrary to the custody decree. The father subsequently moved for a change of custody in the Arapahoe County District Court. While that motion was pending, the mother petitioned for and received a writ of habeas corpus in the El Paso County District Court ordering the father to return the child to the mother under the terms of the original custody decree of the Arapahoe County District Court. In upholding the El Paso County District Court's issuance of the writ enforcing the custody decree, the Colorado Supreme Court stated:

"For the court to do otherwise would condone the father's action in illegally retaining the child in defiance of the court order, and were we in this proceeding to interfere with the habeas corpus action in the El Paso County district court, we would likewise be aiding the father in defying the court decree." 508 P.2d at 135.

So, too, in the instant case requiring an abatement of the enforcement of the Maryland decree pending an appeal from the dismissal of Carol's custody modification action would be to condone Carol's wrongful detention of the children in violation of the Maryland decree. We conclude that abatement of the enforcement of the Maryland decree pending Carol's appeal of the dismissal of her action in Nelson County was neither necessary nor appropriate.

### Enforcement of Foreign Custody Decree by Ex Parte Order

The last issue which we must consider on this application is whether or not the Grand Forks County District Court erred in the procedure it used to enforce the Maryland custody decree. Phaon filed a certified

copy of the Maryland decree with the clerk of the district court. Without first showing that a dire emergency existed, he filed a motion for and was granted an ex parte order requiring Carol to return custody of the children to him pursuant to the terms of the Maryland decree.

Sections 14–14–13 and 14–14–15, N.D. C.C., of the Uniform Child Custody Jurisdiction Act, are pertinent to the enforcement of a foreign custody decree:

"*14–14–13. Recognition of out–of–state custody decrees.–The courts of this state shall recognize and enforce an initial decree or modification decree of a court of another state* which had assumed jurisdiction under statutory provisions substantially in accordance with this chapter or which was made under factual circumstances meeting the jurisdictional standards of this chapter, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this chapter." [Emphasis added.]

"*14–14–15. Filing and enforcement of custody decree of another state.*

1.  *A certified copy of a custody decree of another state may be filed in the office of the clerk of any district court or family court of this state. The clerk shall treat the decree in the same manner as a custody decree of the district court or family court of this state. A custody decree so filed has the same effect and shall be enforced in like manner as a custody decree rendered by a court of this state.*

2.  *A person violating a custody decree of another state which makes it necessary to enforce the decree in this state may be required to pay necessary travel and other expenses, including attorney's fees, incurred by the party entitled to the custody or his witnesses.*" [Emphasis added.]

The National Conference of Commissioners on Uniform State Laws provided a written comment to Section 15 of the Uniform Child Custody Jurisdiction Act which states in pertinent part:

"Out–of–state custody decrees which are required to be recognized are enforced by other states. See section 13. [14–14–13, N.D.C.C.]. Subsection (a) [14–14–15(1), N.D.C.C.] provides a simplified and speedy method of enforcement. It is derived from section 2 of the Uniform Enforcement of Foreign Judgments Act of 1964, 9A U.L.A. 486 (1965)." Handbook of the National Conference of Commissioners on Uniform State Laws, at 213 (1968).

Pursuant to Section 14–14–15(1), N.D.C.C., upon filing a certified copy of a foreign custody decree with the clerk of a district court, the foreign custody decree is given the same effect as a custody decree rendered by a court of this state. The commissioners' comment to this section describing the effect to be given a foreign custody decree indicates that it was derived from the Uniform Enforcement of Foreign Judgments Act which has been adopted by this state and codified as Chapter 28–20.1, N.D.C.C. Section 28–20.1–01, N.D.C.C., of that act defines a "foreign judgment" as ". . . any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this state." We believe that enforcement of a foreign custody decree under Section 14–14–15, N.D.C.C., of the Uniform Child Custody Jurisdiction Act must be accomplished in compliance with the provisions of Chapter 28–20.1, N.D.C.C., which encompasses procedure for enforcement of all foreign judgments. Compliance with Chapter 28–20.1, N.D.C.C., requires the following procedure, among other things, to enforce a foreign judgment:

(1) Prompt mailing of notice to the judgment debtor at his last known post–office address of the filing of the foreign judgment; and

(2) Automatic stay of execution or other process of enforcement of the foreign

judgment until 10 days after the date the judgment is filed.[2]

The notice requirement and the automatic stay of enforcement of a foreign judgment until 10 days after it has been filed with the clerk of a district court affords the judgment debtor an opportunity to request a stay of the enforcement of the foreign judgment and, in the case of a foreign custody decree, to also bring an action to modify the decree. If the judgment debtor does not avail himself of that opportunity, the foreign judgment can be enforced by the district court in like manner as a foreign judgment rendered by a court of this state.

In view of the similarity of facts in the instant case with those of *Giddings v. Giddings*, 228 N.W.2d 915 (N.D.1975), it is necessary to consider the import of our opinion in *Giddings, supra*, as it relates to the instant case. In *Giddings, supra*, a married couple was divorced in Iowa, and the Iowa decree awarded custody of the minor daughter to the mother with reasonable rights of visitation reserved for the father "as are or will be agreed upon between the parties." Shortly after the decree was entered, the father took the child to North Dakota and refused to return her to her mother in Iowa. The mother than obtained an order from the Iowa court finding the father in contempt for failure to return the child. Armed with the Iowa custody decree and contempt order the mother obtained an ex parte order from the Burleigh County District Court which directed the sheriff of Burleigh County to take the child from the father and place her in the mother's custody. The sheriff took the child into custody in compliance with the order, and the father then filed a petition for a writ of habeas corpus with the Burleigh County District Court. A hearing was held on the petition at which the father attempted to introduce evidence that he had not violated the custody arrangement that allegedly had been agreed to between the parties and also that it would not be in the best interests of the child to place her in the custody of her mother and to allow her to be removed from North Dakota. The district court refused to allow the father to introduce such evidence because, in the court's opinion, to allow its introduction would result in not giving full faith and credit to the Iowa custody decree. Consequently, the district court denied the petition for the writ of habeas corpus. We held that it was error for the court to enforce the Iowa decree without proceeding under the Uniform Child Custody Jurisdiction Act, Chapter 14–14, N.D.C.C. We concluded that the district court had jurisdiction to decide the custody issue under Section 14–14–03, N.D.C.C., and that it should have held an evidentiary hearing to decide what custody disposition would be in the best interests of the child. Accordingly, this Court reversed the ex parte order and remanded for further proceedings.

*Giddings, supra*, involved more than an attempt to enforce a foreign custody decree.[3] The father's request to introduce evidence that it was not in the best interests of the child to be returned to the custody of her mother in Iowa constituted, in effect, a request for modification of the Iowa custody decree. It was this aspect of the situation that made it necessary for the district court in *Giddings, supra*, to hold an

---

2. We note that procedure for enforcement of judgments of this state under Rule 62(a) and 77(d) of the North Dakota Rules of Civil Procedure is very similar to the procedure for enforcement of foreign judgments under Chapter 28–20.1, N.D.C.C. Rule 62(a), N.D.R.Civ.P., with a few exceptions, requires that no execution shall issue upon a judgment nor any proceedings be taken for its enforcement until the expiration of 10 days after its entry. Rule 77(d), N.D.R.Civ.P., requires that the prevailing party shall serve notice upon the adverse party of the entry of a judgment within 10 days after its entry.

3. As this Court stated in the *Giddings, supra*, opinion the adversary system was not functioning in that case as counsel for the mother had been permitted to withdraw by the district court. The case was also wrought with other procedural problems. Neither party had referred the court to the Uniform Child Custody Jurisdiction Act, Chapter 14–14, N.D.C.C., or to the Uniform Enforcement of Foreign Judgments Act, Chapter 28–20.1, N.D.C.C.

evidentiary hearing and to render a custody determination in accordance with the provisions of the Uniform Child Custody Jurisdiction Act, Chapter 14–14, N.D.C.C.

■ A foreign custody decree, a certified copy of which is properly filed under Section 14–14–15, N.D.C.C., can be enforced by an ex parte order or in any other manner than a custody decree of a court of this state can be enforced providing that enforcement of the foreign custody decree is accomplished in compliance with the Uniform Enforcement of Foreign Judgments Act, Chapter 28–20.1, N.D.C.C. Enforcement of a foreign custody decree by a court of this state does *not* require a determination of the court's jurisdiction under Section 14–14–03, N.D.C.C., notice and hearing under Section 14–14–04, N.D.C.C., or a custody determination by the court under Chapter 14–14, N.D.C.C. To the extent that *Giddings, supra,* reflects a contrary view, it is hereby overruled.

In her action, Carol requested the Nelson County District Court to accept jurisdiction under Chapter 14–14, N.D.C.C., and to modify the Maryland custody decree. No such request was made by Phaon in the Grand Forks County District Court. Rather, Phaon filed a certified copy of the Maryland custody decree under Section 14–14–15, N.D.C.C., and requested the Court to merely enforce the decree. Therefore, it was not necessary for the Grand Forks County District Court to acquire jurisdiction under Section 14–14–03, N.D.C.C., or to make a custody determination under Chapter 14–14, N.D.C.C.

■ However, the enforcement of the Maryland decree under Section 14–14–15, N.D.C.C., was not accomplished in compliance with Chapter 28–20.1, N.D.C.C. Carol was not notified of the filing of the foreign decree in this state as required under Section 28–20.1–03(2), N.D.C.C., nor was a ten-day period allowed to elapse prior to en-

forcement of the decree as required under Section 28–20.1–03(3), N.D.C.C. On July 18, 1980, we entered a temporary stay of the July 14, 1980, ex parte order of the Grand Forks County District Court pending the hearing on these matters. We hereby continue the stay of the July 14, 1980, ex parte order until Carol is given notice of the filing of the Maryland decree and a period of ten days has been allowed to elapse from the date such notice is given.[4]

WRIT OF PROHIBITION DENIED. STAY OF EX PARTE ORDER CONTINUED PURSUANT TO OPINION.

PEDERSON, SAND and PAULSON, JJ., concur.

VANDE WALLE, Justice, concurring in part and dissenting in part.

I concur in those portions of the majority opinion which conclude this is not a proper case for issuance of a writ of prohibition and that abatement of the enforcement of the Maryland decree pending Carol's appeal of the dismissal of her action in Nelson County was neither necessary nor appropriate. I cannot, however, agree with that portion of the majority opinion which concludes that the Uniform Enforcement of Foreign Judgments Act, Chapter 28–20.1, N.D.C.C., is applicable to the enforcement of a foreign custody decree under Chapter 14–14, N.D.C.C., the Uniform Child Custody Jurisdiction Act.

Section 14–14–15, N.D.C.C., contains a provision for the filing and enforcement of a custody decree of another State. A similar provision is found in Section 28–20.1–02, N.D.C.C., governing the filing of foreign judgments. As the majority opinion notes, the National Conference of Commissioners on Uniform State Laws in its comment to what is codified in North Dakota as Section 14–14–15, N.D.C.C., indicates the section "provides a simplified and speedy method of enforcement. It is derived from section 2

---

4. Section 28–20.1–03(3), N.D.C.C., requires that no process for enforcement of a foreign judgment shall issue "until ten days after the date the judgment is filed." Since the order of enforcement was issued prior to the elapse of ten days from the date the Maryland decree was filed, we are requiring in this case that a period of ten days be allowed to elapse after notice is given under Section 28–20.1–03(2), N.D.C.C.

of the Uniform Enforcement of Foreign Judgments Act of 1964, . . ." But if the National Conference of Commissioners intended the notice provisions required under the Uniform Enforcement of Foreign Judgments Act to apply, why did it not also incorporate that provision into the Uniform Child Custody Jurisdiction Act? I submit the reason is obvious—it did not intend the notice provision to apply. I believe that by not incorporating the notice provision of the Uniform Enforcement of Foreign Judgments Act into the Uniform Child Custody Jurisdiction Act, the National Conference of Commissioners gave a strong indication that the notice provision is not applicable to child–custody decrees. Furthermore, if a child–custody decree of another State is to be governed by the Uniform Enforcement of Foreign Judgments Act, as any other foreign judgment, provisions in the Uniform Child Custody Jurisdiction Act concerning the enforcement of a foreign child–custody decree are useless statutes because provisions for enforcement are already contained in Chapter 28–20.1.

A short examination of the reasons for the enactment of a Uniform Enforcement of Child Custody Jurisdiction Act should suffice to indicate that child custody is a special situation requiring special procedures different from those governing ordinary judgments affecting such things as property or money damages. Section 14–14–01, N.D.C.C., states the purposes of the Uniform Child Custody Jurisdiction Act are, among others, to:

"e. Deter abductions and other unilateral removals of children undertaken to obtain custody awards;

"f. Avoid relitigation of custody decisions of other states in this state insofar as feasible;

"g. Facilitate the enforcement of custody decrees of other states; . . ."

Subsection 2 of Section 14–14–01 requires us to construe the provisions of Chapter 14–14 to promote the general purposes stated in that section. I cannot conclude that imposing the notice requirements of the Uniform Enforcement of Foreign Judgments Act on the Uniform Child Custody Jurisdiction Act promotes any of the general purposes set forth in Section 14–14–01, particularly those quoted above. Requiring the same notice required for the enforcement of any other foreign judgments does not facilitate the enforcement of custody decrees of other States. If the Uniform Enforcement of Foreign Judgments Act is applicable to foreign child–custody decrees, enforcement of child–custody decrees is facilitated as much as it is going to be, without the provisions of the Uniform Child Custody Jurisdiction Act. The conclusion by the majority does not deter a parent who is required to relinquish custody of a child under a foreign decree from retaining custody of that child contrary to the provisions of that decree. A parent who has custody of a child and relinquishes that child to the custody of the other parent in North Dakota for visitation purposes pursuant to the requirements of the custody decree must now be wary. Unless that custody decree has been filed in this State *and* unless the notice is given that such decree has been filed as required by Section 28–20.1–03, N.D.C.C., the parent may, with impunity, ignore the custody decree *and retain* the child beyond the time permitted in the decree. If the parent having permanent custody is not wary and does not give the required notice of the filing of the foreign decree until the other parent refuses to return the child, the majority opinion guarantees the parent who is ignoring the custody decree a minimum of ten days in which he or she may continue to retain custody of the child in violation of the decree.

The other purpose of the Uniform Child Custody Jurisdiction Act which I have quoted above is to avoid relitigation of custody decisions of other States in this State insofar as feasible. The majority opinion does not define in detail the purpose of the notice of the filing of the foreign decree. I assume the notice is more than a matter of form and that its purpose is to permit the noncustodial parent to object to the enforcement of that decree for procedural or substantive reasons. I fear, however, that the requirement will merely be an addition-

al route to seek modification of the foreign decree. Where, as here, the trial court has dismissed because of lack of jurisdiction a petition for change in custody, the procedure required by the majority opinion will permit the petitioner to have yet another day in court, perhaps before a different judge, to plead for a modification of the foreign custody decree. Such procedure encourages rather than avoids relitigation of custody decisions of other States in this State.

It appears the concern of the majority may be that it is contrary to fundamental due process to issue an ex parte order requiring a parent to relinquish custody of her child even if that custody is contrary to a valid foreign custody decree. I might agree that ex parte orders do not provide fundamental due process. But as applied to the particular facts of this case, the requirements of the majority opinion appear unnecessary. Although Phaon obtained an ex parte order requiring Carol to relinquish custody of the children to him, Judge Smith, sitting as the Nelson County district court, also presided in Nelson County over Carol's action to modify the Maryland custody decree. The majority opinion concedes that at the Nelson County hearing on the petition for modification of the Maryland custody decree, Carol was represented by counsel and Judge Smith heard legal arguments and evidence by both Carol and Phaon which were pertinent not only to Judge Smith's determination that the courts of this State lacked jurisdiction to modify the Maryland decree but to his determination to issue the ex parte order enforcing the Maryland custody decree as well. Thus there can be no contention that this was an ex parte order issued by a judge who was unfamiliar with the issue or who had heard only one side of the issue.

Carol has argued that because Phaon intends to remove the children from the United States to the Philippines, where he is to be employed, the children and Phaon would be removed from the jurisdiction of our courts; that if, on appeal, this court were to reverse Judge Smith's decision that the courts of this State lacked jurisdiction to modify the Maryland custody decree, Phaon and the children would no longer be in this country and Phaon would not have to abide by any possible modification in the custody decree made by the courts of this State. This same argument was considered and rejected in *Bergstrom v. Bergstrom*, 271 N.W.2d 546 (N.D.1978). The record does not disclose that Phaon has refused to abide by custody awards made by the courts of this country. Rather, it is Carol who has taken matters into her own hands and refused to return the children to Phaon's custody as required by the only valid existing custody decree, the Maryland decree. Her refusal to return the children to Phaon's custody as required by the Maryland decree resulted in Phaon's seeking the ex parte order to which Carol now objects.

I would deny the stay of the ex parte order.