Ralph T. OVERMAN, Appellant,

v.

UNITED STATES of America, Fred
Hornkohl and Frances
Overman, Appellees.

No. 76–1997.

United States Court of Appeals,
Eighth Circuit.

Submitted June 15, 1977.

Decided Oct. 25, 1977.

Harold B. Bamburg, argued and filed appearance, and Kenneth J. Heinz, St. Louis, Mo., on brief, for appellant.

Barry A. Short (former U. S. Atty.) and Joseph B. Moore, Asst. U. S. Atty., St. Louis, Mo., filed brief, for appellees.

Leonard Schaitman and Harry R. Silver, Dept. of Justice, Washington, D. C., filed appearance form.

Before LAY and BRIGHT, Circuit Judges, and MILLER, Judge.*

---

BRIGHT, Circuit Judge.

This appeal raises important and novel questions concerning the scope of federal jurisdiction over domestic relations cases: It concerns a suit contesting the validity of a prior divorce decree that comes into federal court by removal after a federal employee garnished for alimony and child support obligations sought to enjoin his federal disbursing officer from honoring the garnishment. The district court rejected the plaintiff's motions to remand the case to the Missouri state court, and on motion of the federal defendants, the court dismissed the action for want of an indispensable party, the plaintiff's ex-wife. This appeal followed. We affirm the dismissal against the United States but for the reason that this action fails to state any cause of action against the United States or its disbursement officer cognizable in either federal or state court. We also order the district court to reinstate the remainder of the action, a suit between the ex-spouses contesting the validity of their divorce, and then remand it back to the Missouri state court for disposition.

I. *Background.*

We relate the factual and procedural background as necessary to an understanding of our determination.

Ralph and Frances Overman were divorced in 1968 in Anderson County, Tennessee. The divorce decree ordered Mr. Overman to make periodic alimony and child support payments to Mrs. Overman. Mr. Overman then moved to St. Louis County, Missouri, where he secured a job with the Veterans Administration. After a time, Mr. Overman fell behind on this support obligation. In response, Mrs. Overman secured a writ of garnishment[1] on Mr. Overman's salary

* JACK R. MILLER, Judge, U. S. Court of Customs and Patent Appeals, sitting by designation.

1. Effective January 1, 1975, the United States waived its immunity from state garnishment actions directed at federal employees. 42 U.S.C. § 659 (Supp.1975). The statute provided that:

Notwithstanding any other provision of law, effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States (including any agency or instrumentality thereof and any wholly owned Federal corporation) to any individual, including members of the armed services, shall be subject, in like manner and to the

and served it by mail on him, the United States, and Fred Hornkohl, disbursement officer for the Veterans Administration.

After being advised by the Veterans Administration that it would honor the garnishment, Ralph filed suit in the Circuit Court of St. Louis County, Missouri, alleging that the garnishment was unauthorized and illegal because it was based on a fraudulently-procured Tennessee divorce decree. In response to his verified petition, the Missouri state court issued an order to show cause why a temporary injunction should not be granted, and temporarily restrained the United States and its disbursing officer from honoring the garnishment, and Frances Overman from attempting to obtain satisfaction of her claims by garnishing her former husband's wages. The United States Attorney for the Eastern District of Missouri removed the action to federal district court.

Mr. Overman filed a motion to remand, but the district judge overruled that motion on September 2, 1976. The court granted a contemporaneous motion by the federal defendants (construing that motion to dismiss for want of subject matter jurisdiction and for failure to state a claim as one to dismiss for want of personal jurisdiction over an indispensable party) to dismiss the case after determining that Mrs. Overman was an essential party but had not been properly served as a defendant.[2] A subsequent motion to set aside or amend the order of

dismissal was denied, and Mr. Overman brought this appeal.[3]

II. *Removal.*

Whether a domestic relations suit ought to come before a federal court in any aspect, even though a federal officer in an official capacity may be implicated in a peripheral fashion, is a matter of grave concern. With rare exceptions, such disputes traditionally have been subject to exclusive state jurisdiction. "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *In re Burrus,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 853, 34 L.Ed. 500 (1890); *accord, Ohio ex rel. Popovici v. Agler,* 280 U.S. 379, 383, 50 S.Ct. 154, 74 L.Ed. 489 (1930). *See also Buechold v. Ortiz,* 401 F.2d 371 (9th Cir. 1968); *Hernstadt v. Hernstadt,* 373 F.2d 316 (2d Cir. 1967); *Morris v. Morris,* 273 F.2d 678 (7th Cir. 1960).

In this case appellant Ralph Overman has attacked in Missouri courts the validity of his divorce decree issued in Tennessee. By naming the federal government and the local Veterans Administration's disbursing officer as parties, Mr. Overman hopes to litigate his domestic relations dispute in his homestate forum. The Government obviously asserts no interest in the controversy but seeks to avoid the crossfire of simulta-

same extent as if the United States were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments.

2. The district court accepted into the record a letter sent by appellee Frances Overman to the court in which she contended that the court lacked personal jurisdiction over her. The court treated the letter as a motion to dismiss for lack of personal jurisdiction, and dismissed her as a party after she filed an affidavit in support of the facts alleged in her letter.

3. In his petition before the district court to amend the order of dismissal, Mr. Overman contended that a settlement agreement had been reached between Mrs. Overman and himself. After receiving the evidence from both parties on this issue, the district judge denied the motion on September 20, 1976. Mr. Over-

man then appealed both the order of the court dismissing his complaint and the order denying his motion to set aside or amend the order of dismissal. The appeal was fully briefed and set for argument on June 15, 1977. Before the case was argued, however, evidence surfaced indicating that the Government had been and was continuing to pay all of appellant's salary to him. With this information, we ordered the case dismissed as moot.

The next day counsel for both appellant and the Government learned that on June 9, 1977, a second garnishment summons had been served on the Government in the Tennessee action and that the Government intended to honor this garnishment. Upon our receiving notice of these changes in circumstances, we reinstated the appeal for reconsideration upon the briefs, supplemental record, and the oral argument.

neous conflicting state decrees: a Tennessee garnishment writ, and a Missouri court order to ignore that writ and to continue paying Mr. Overman his salary pending the Missouri state court hearing. Understandably, the Government by removal seeks the protection of the federal forum.

■ The Government appellees are entitled to that protection under 28 U.S.C. § 1442(a)(1) (1970). That statute allows removal to the federal courts of any civil action against a federal officer "for any act under color of such office." [4]

In *Willingham v. Moran,* 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969), the Court reviewed the history of this removal statute and agreed with the Government's argument that

> the removal statute is an incident of federal supremacy, and that one of its purposes was to provide a federal forum for cases where federal officials must raise defenses arising from their official duties. On this view, the test for removal should be broader, not narrower, than the test for official immunity. [*Id.* at 405, 89 S.Ct. at 1815.]

■ The federal disbursing officer, in responding to a garnishment under 42 U.S.C. § 659, acts in his official capacity. Accordingly, the federal district court properly refused to remand the case to state court as long as the United States and its disbursing officer remained parties.

III. *Defenses of Federal Defendants.*

■ In district court, the federal defendants moved to dismiss the complaint under Fed.R.Civ.P. 12(b) for want of subject matter jurisdiction and for failure to state a claim upon which relief could be granted. The district court, however, did not address the federal defenses as would have been

proper but addressed a procedural issue in the central controversy, whether Frances Overman had become a party by service or appearance. We think the district court erred in this regard for, as observed in *Willingham,* "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in federal court." *Id.* at 407, 89 S.Ct. at 1816.

■ Clearly, the defense of sovereign immunity applies here. Appellant points to no statute or other ground permitting him to sue the Government, and 42 U.S.C. § 659, cited at note 1, does not authorize this action against the federal defendants. For that reason, the complaint states no cause of action that is cognizable in any court, federal or state, and the federal defendants' motion to dismiss for failure to state a claim on which relief could be granted should have been granted instead of the motion to dismiss for lack of subject matter jurisdiction.

■ In 42 U.S.C. § 659 (Supp.1975), the United States waived its immunity from state garnishment actions directed at federal employees. The statute simply removed the bar of sovereign immunity to one narrow class of actions: enforcement of garnishment writs issued by state courts. *See, e. g., Wilhelm v. United States Department of Air Force Accounting,* 418 F.Supp. 162, 164 (S.D.Tex.1976). Nothing in the statute or legislative history, however, indicates any congressional intent to expose the Government to wider liability.

■ The language of § 659 waives Government immunity only from legal process "brought for the enforcement * * of [the] legal obligations to provide child support or make alimony payments." The statute patently does not waive governmental immunity to other kinds of lawsuits, and

---

4. The full text of that section provides:

(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of revenue.
[28 U.S.C. § 1442(a)(1) (1970).]

we ought not to imply any waiver in a suit such as this one where the garnishee, in challenging the validity of the garnishment, seeks to litigate the validity of the underlying divorce decree.

■ In sum, we hold that under § 659, Congress has not consented to its fiscal officer being sued for any purpose other than enforcement of the legal obligation to provide child support or alimony payments. Section 659 was never intended as a peg on which to hang by a bootstrap all of the domestic relations disputes involving federal employees. Federal courts should be extremely wary of becoming general arbiters of any domestic relations imbroglio.

■ Under § 659, the United States must respond to the garnishment to the same extent as a private person for similar legal process and only to that extent. Accordingly, we hold that the plaintiff's complaint states no complaint against the United States within the bounds of actions authorized under § 659.

## IV. *Remand of Balance of Action to State Court.*

[11, 12] We do not believe that protection of the federal interest on removal requires the federal court to do more than address the federal defense. As we have held, appellant possesses no right to sue the United States or its fiscal officer in this case. *Cf. Popple v. United States,* 416 F.Supp. 1227 (W.D. N.Y. 1976). Having addressed the federal claim then, the balance of the controversy should be remanded to the state court for it concerns a matter that has long been within the exclusive province of the state courts.

■ There is, and ought to be, a continuing federal policy to avoid handling domestic relations cases in federal court in the absence of important concerns of a constitutional dimension. *See, e. g., Ohio ex rel. Popovici v. Agler,* 280 U.S. 379, 383, 50 S.Ct. 154, 74 L.Ed. 489 (1930); *In re Burrus,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890); *Hernstadt v. Hernstadt,* 373 F.2d 316 (2d Cir. 1967). Such cases touch state law and policy in a deep and sensitive manner, and "[a]s a matter of policy and comity, these local problems should be decided in state courts." *Buechold v. Ortiz, supra,* 401 F.2d at 373. This court will not lightly presume that Congress, when enacting § 659, meant for the federal courts to take over the entire domain of domestic relations law applicable to federal employees.[5] Moreover, we will not readily infer

---

5. The federal courts have uniformly rejected jurisdiction of ordinary garnishment proceedings whether the federal defendants have sought removal or the action has been commenced initially in federal court. *Wilhelm v. United States Dept. of Air Force Accounting,* 418 F.Supp. 162 (S.D. Tex. 1976); *Popple v. United States,* 416 F.Supp. 1227 (W.D. N.Y. 1976); *Golightly v. Golightly,* 410 F.Supp. 861 (D. Neb. 1976); *Morrison v. Morrison,* 408 F.Supp. 315 (N.D. Tex. 1976); *West v. West,* 402 F.Supp. 1189 (N.D. Ga. 1975); *Bolling v. Howland,* 398 F.Supp. 1313 (M.D. Tenn. 1975).

The legislative history of § 659 and parallel code provisions also suggest that Congress did not intend to require federal courts to implement § 659.

In the debate prior to enactment of § 659, the following exchange took place:

Mr. ECKHARDT. . . . In Texas, we do not have garnishment of wages, so this would be ingraining the Federal law on existing State law. Under circumstances like that I would think the case would be removable to the Federal court as a matter of right.

Is that what the gentleman feels would result? *Can these cases all be removed to Federal courts.*

Mr. ULLMAN. No. The garnishment provision places the U.S. Government in the same position as a private employer. *Nonsupport cases can be certified to the Federal courts only by the Secretary of* HEW *who must find that use of the Federal courts is the only reasonable way to enforce a court order.* In the situation the gentleman cites, there would be no court order on which to base such a finding. [*Bolling v. Howland,* 398 F.Supp. 1313, 1316 (M.D. Tenn. 1975), *quoting* 120 Cong.Rec. H12,585–12,587 (daily ed. Dec. 20, 1974) (emphasis is original).]

Congressman Ullman's comment about certification is a reference to 42 U.S.C. § 660 (Supp. 1975). That provision provides federal jurisdiction for civil actions arising under 42 U.S.C. § 652(a)(8) (Supp.1975), if certified by the Secretary of Health, Education and Welfare. Since §§ 652(a)(8) and 659 are parallel provisions, that is, both are part of Pub.L. 93–647, § 606(a), 88 Stat. 2351, 2357, the presumption

that Congress intended to permit federal agencies to be dragged in as defendants by any federal employee or spouse of an employee who, unhappy with a prior state adjudication, seeks to contest it by suing the Government over wage garnishment rather than challenging the divorce decree in an appropriate state forum. To have federal courts adjudicating such disputes, where the only federal connection is garnishment of government wages, would truly be a case of the tail wagging the dog.

Thus, in addressing the issue of jurisdiction over Mrs. Overman's person, the district court considered an issue touching upon the parties' domestic relations problems, including a possible settlement. Resolution of such an issue is best left to the state courts.

Accordingly, we affirm the dismissal of the district court as to the federal defendants, but modify the judgment and direct that the existing action without the federal defendants now be remanded to the Missouri state court.

must be that if Congress had intended federal jurisdiction for cases arising under § 659 it would have explicitly provided for it, as it did for § 652(a)(8).