NATIONAL DENTAL COUNCIL, R. Thomas Tipton, D.M.D., and Sheldon Lynne, D.D.S., Plaintiffs,

v.

COMMONWEALTH OF PENNSYLVANIA, STATE BOARD OF DENTISTRY, et al., Defendants.

Civ. A. No. 87–0568.

United States District Court, M.D. Pennsylvania.

Sept. 23, 1987.

Joel R. Burcat, Rhoads & Sinon, Harrisburg, Pa., for plaintiffs.

Joel M. Ressler, Dep. Atty. Gen., Harrisburg, Pa., for defendants.

MEMORANDUM

CALDWELL, District Judge.

Pending for disposition is the defendants' motion to dismiss the amended complaint, plaintiffs' motion for a preliminary injunction, and plaintiffs' motion for entry of an order. The latter motion essentially duplicates plaintiffs' request for an injunction.

The original complaint, filed on April 17, 1987, by plaintiff, R. Thomas Tipton, D.M.D., and the National Dental Council (Council), attacked the constitutionality of section 3(f) of Pennsylvania's Dental Law, Act of May 1, 1933, P.L. 216, *as amended,* 63 P.S. § 122(f) (Purdon Pamphlet 1987–88) under the fourteenth amendment, U.S. Const. amend XIV and 42 U.S.C. § 1983, on due process and equal protection grounds. A commerce clause claim was also set forth. U.S. Const. art I, § 8, cl. 3. The complaint sought declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, and an injunction. The amended complaint, filed on June 16, 1987, set forth the same legal claims but added Sheldon Lynne, D.D.S. as a plaintiff. The defendants are the State Board of Dentistry (Board) and its individual members.[1]

Plaintiffs allege that the Dental Law provides two alternative ways of being licensed to practice dentistry in Pennsylvania: (1) by passing the examination provided by 63 P.S. § 122(e); or (2) by proof of having been licensed in a state having standards for admission to practice equal to those of Pennsylvania, provided that the state of original licensing would reciprocate by accepting as valid, licenses issued by Pennsylvania. Plaintiffs object to the reciprocity requirement on due process, equal protection and commerce clause grounds. They assert that when a dentist has met the qualifications of a state having the same standards as Pennsylvania, it would be unconstitutional for Pennsylvania to refuse to issue a license simply because the issuing state would not extend the same

---

1. The Board moved on its separate motion to dismiss the complaint against it based upon the eleventh amendment. U.S. Const. amend XI. Plaintiffs concurred in the motion because they did not view retention of the Board in the litigation as crucial to their success on the merits. Accordingly, the Board will be dismissed from this action.

courtesy to dentists licensed by Pennsylvania.

Dr. Tipton was a licensed dentist in Utah but has now moved to Pennsylvania. Dr. Lynne is a Louisiana dentist who, while he has no plans to practice in Pennsylvania, desires a license from Pennsylvania. He is also the President of the plaintiff Council, a national organization of dentists located in Washington, D.C., established to eliminate barriers to licensure such as the Pennsylvania reciprocity requirement.

Since the initiation of this lawsuit, questions of justiciability and ripeness have arisen. Dr. Tipton has taken and passed the North East Regional dental examination, an approved examination for licensure in Pennsylvania, and was licensed to practice dentistry on July 14, 1987. The parties agree that the action as to Dr. Tipton is therefore moot. Defendants contend that the remaining plaintiffs, the Council and Dr. Lynne, lack standing as well. Defendants argue that Dr. Lynne's lack of good faith in prosecuting this action is fatal to his standing. They suggest that Dr. Lynne expressed an interest in obtaining a Pennsylvania license, and joined this suit some two months after the original complaint was filed, only after it appeared that Dr. Tipton's claims would be mooted when he passed the North East Regional examination. Dr. Lynne has expressed no interest in practicing dentistry in Pennsylvania. Accordingly, with no real stake in the outcome of this suit, and merely litigating his interest in a legal issue of great significance to him, Dr. Lynne cannot continue to prosecute this action. Additionally, since the Council can only derive its standing from Dr. Lynne's standing, *see International Union, UAW v. Brock*, 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986), it follows that the Council lacks standing as well and that this case must be dismissed for lack of justiciability.

Plaintiffs counter that Dr. Lynne's motivation in joining this lawsuit is irrelevant. Pennsylvania does not require dentists to actually practice in the state as a condition for licensure. Since plaintiff has established he would be denied a license because of the reciprocity condition, he has suffered legal injury and has standing. Citing *Brock*, plaintiff argues that it follows that the Council also has standing.

■ An association may have standing based upon injury to itself, *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), but no such claim has been alleged in the complaint. Accordingly, the Council's standing in the instant case must be derived solely from its ability to assert representational standing on behalf of injured members. *Id.* That requires, in part, that "its members would otherwise have standing to sue in their own right." *Brock, supra,* 477 U.S. at 282, 106 S.Ct. at 2529, 91 L.Ed.2d at 238 (quoting *Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383, 394 (1977)). Therefore, we must look to Dr. Lynne's standing to determine if this action is still justiciable.

■ Standing to assert a claim is not affected by a plaintiff's motivation in challenging a law or in setting himself up as a test plaintiff for the purposes of challenging the law. In *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894 (3d Cir.1977), the plaintiff made two applications to the defendant association to place him upon a waiting list for a home. When it refused to do so, plaintiff filed suit under 42 U.S.C. § 1982 and the Fair Housing Act of 1968, 42 U.S.C. § 3601 *et seq.* The district court dismissed the complaint, in part, because plaintiff was a "tester" whose lack of good faith was a complete defense to his claims. Reversing, the court of appeals stated:

The gist of the district court's holding that Meyers' status as a "tester" bars him from relief under sections 1981 and 1982 is, as we understand it, that Meyers lacks the personal interest or stake in Pennypack's policies which is required to give him standing to sue. *See, e.g., Tileston v. Ullman,* 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943). In appealing from this aspect of the district court's decision, Meyers asserts that the court's finding that he was a "tester" is clearly erroneous but we need not review the

court's finding of fact. Even assuming *arguendo* that Meyers' application to Pennypack was in fact motivated solely by his desire to test the legality of Pennypack's policies, such a purpose is sufficient to confer standing. *See e.g., Smith v. YMCA of Montgomery,* 462 F.2d 634, 645–46 (5th Cir.1972). In *Evers v. Dwyer,* 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958) (per curiam), the Supreme Court held that a black plaintiff had standing to maintain a civil rights action even though his purpose in sitting in the white section of a segregated bus was to test the legality of the segregation. The Court reiterated the same principle nine years later in *Pierson v. Ray,* 386 U.S. 547, 558, 87 S.Ct. 1213 [1219], 18 L.Ed.2d 288 (1967). A group of clergymen from various Northern states, *Pierson v. Ray,* 352 F.2d 213, 215–16 (5th Cir.1965), travelled to Jackson, Mississippi, and entered that city's bus terminal "for the sole purpose of testing their rights to unsegregated public accommodations." The Court held that

> The petitioners had the right to use the waiting room of the Jackson bus terminal, and their deliberate exercise of that right in a peaceful, orderly, and inoffensive manner does not disqualify them from seeking damages under § 1983.

386 U.S. at 558, 87 S.Ct. at 1220 (footnote omitted). We therefore hold that Meyers had standing to maintain his action under § 1982.

*Id.* at 898 (footnote omitted).

*Meyers* and the cases it relies upon are arguably distinguishable from the instant action. *Smith* involved a challenge to the racial policies of the YMCA of Montgomery, Alabama by black residents of Montgomery. The plaintiff in *Evers* was a resident of Memphis, Tennessee, challenging a local ordinance requiring blacks to ride at the back of public busses. In *Pierson,* while the clergymen were not residents of Jackson, Mississippi, they were arrested for sitting in the bus terminal. Finally, in *Meyers,* the plaintiff had actually been a resident of Pennsylvania near the defendant association when he made his first application to be on the waiting list.[2] It could be argued that these factors, absent from the case at bar, gave the plaintiffs in those cases a sufficient personal stake to consider their claims justiciable and to confer standing upon them.[3]

*Meyers,* however, did not consider any of these factors significant or rely upon them in its reasoning. Standing was found based upon plaintiff's application for, and denial of a space upon, the waiting list. That plaintiff was motivated solely by a desire to litigate the legality of defendant's policies was irrelevant to that issue.

■ Similarly, in the instant case, we need not consider Dr. Lynne's motivation in joining this lawsuit. He has indicated a desire to obtain a license and has been informed by the Board that he cannot obtain one without sitting for an examination because Louisiana would not reciprocally recognize a Pennsylvania license. As noted previously, Pennsylvania does not impose any residency requirement, or other requirement dealing with practicing in Pennsylvania, before issuing a license. These facts indicate that Dr. Lynne has established the requisite standing.

The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v Carr,* 369 US 186, 204, 7 L Ed 2d 663, 82 S Ct 691 [703] (1962). As refined by

**2.** Subsequently, plaintiff lived in Ohio, New Jersey and New York and his second application, and a subsequent demand to be placed on the waiting list, were made while plaintiff was residing out of state.

**3.** It could also be argued that the cases are distinguishable from the instant one because they involve black plaintiffs who have a general interest in eliminating discriminatory practices. We reject that contention. *See Gavett v. Alexander,* 477 F.Supp. 1035 (D.D.C.1979).

subsequent reformulation, this requirement of "personal stake" has come to be understood to require not only a "distinct and palpable injury," to the plaintiff, *Warth v Seldin*, 422 US 490, 501, 45 L Ed 2d 343, 95 S Ct 2197 [2206] (1975), but also a "fairly traceable" causal connection between the claimed injury and the challenged conduct. *Arlington Heights v Metropolitan Housing Dev. Corp.*, 429 US 252, 261, 50 L Ed 2d 450, 97 S Ct 555 [561] (1977).

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595, 610 (1978). Plaintiff's injury is his inability to obtain a license and that is causally related to the conduct of the defendants. In *Gavett v. Alexander*, 477 F.Supp. 1035 (D.D.C.1979), the court addressed the standing of a plaintiff challenging a federal law requiring membership in the National Rifle Association before being entitled to purchase a rifle from the government at a discount price. The court stated as follows:

> Plaintiff Gavett claims, quite simply, that he has the requisite personal stake in this controversy by virtue of the fact that he wishes to purchase a rifle from the government at a discount price but is being denied that opportunity because the act reserves it exclusively to members of the NRA. Clearly, plaintiff would be able to purchase an Army rifle at a discount but for the NRA membership requirement imposed by the statute, and he is thus "injured" by it. It is equally clear that, should he prevail in this lawsuit the injury would be redressed: he would be able to purchase a rifle at the same price as NRA members. Under the most elementary rules of standing, jurisdiction, and case or controversy, Gavett qualifies as a plaintiff.

*Id.* at 1041.

The court went on the reject the NRA argument that plaintiff lacked standing because he was a "contrived" plaintiff who lacked "good faith." We conclude that Dr. Lynne has standing in the instant case.

■ This conclusion, however, does not necessarily mean we must adjudicate plaintiff's claims. There are other, non-constitutional limitations upon the authority of a district court to adjudicate a dispute. One of those is ripeness which bears a close affinity to the standing issue, see *Warth v. Seldin*, 422 U.S. 490, 499 n. 10, 95 S.Ct. 2197, n. 10, 45 L.Ed.2d 343, 355 n. 10 (1975). Ripeness is normally an issue in cases involving administrative agencies, see, e.g., *Wilmac Corp. v. Bowen*, 811 F.2d 809 (3d Cir.1987), but the basic principles of the doctrine have been applied in other contexts. See *Bergstrom v. Bergstrom*, 623 F.2d 517 (8th Cir.1980). In *Brown v. Ferro Corp.*, 763 F.2d 798 (6th Cir.), *cert. denied*, 474 U.S. 947, 106 S.Ct. 344, 88 L.Ed.2d 291 (1985), the court of appeals concluded that a shareholder's suit seeking to contest the legality of a corporate severance agreement could not be adjudicated because the agreement had not yet been used. Interpreting ripeness as an aspect of the constitutional requirement of a case or controversy, the court stated:

> Ripeness doctrine serves the same general purposes as other branches of justiciability theory. The central perception is that courts should not render decisions absent a genuine need to resolve a real dispute. Unnecessary decisions dissipate judicial energies better conserved for litigants who have a real need for official assistance.... Perhaps more important, decisions involve law making. Courts worry that unnecessary lawmaking should be avoided, both as a matter of defining the proper role of the judiciary in society and as a matter of reducing the risk that premature litigation will lead to ill-advised adjudication. These concerns translate into an approach that balances the need for decision against the risks of decision. The need to decide is a function of the probability and importance of the anticipated injury. The risks of decision are measured by the difficulty and sensitivity of the issues presented, and by the need for further factual development to aid decision.

*Id.* at 801 (quoting Wright, Miller & Cooper, 13A Federal Practice & Procedure, § 3532.1 at p. 114).

These considerations lead us to conclude that we should not adjudicate Dr. Lynne's claims. He admits that he does not intend to use the Pennsylvania license in the near future. He desires the license only in case he may need it at some indeterminable time in the future. Under the circumstances, there is no genuine need to resolve the dispute and, balancing the need to decide against the risk of decision, we believe that we should not adjudicate plaintiff's claims.[4]

■ The same result is reached using the following well-established standard for deciding when a case is ripe for injunctive or declaratory relief:

[W]here the party aggrieved seeks injunctive and declaratory relief as here, since those remedies are discretionary, the court should hesitate to apply them unless (a) the issues are fit for judicial resolution and (b) withholding judicial consideration would result in hardship to the parties.

*A.O. Smith Corp. v. FTC,* 530 F.2d 515, 521 (3d Cir.1976) (brackets added). *See also Wilmac Corp., supra.*

Dr. Lynne will not suffer hardship if judicial consideration is withheld since he will be able to continue to practice dentistry in Louisiana and since he has no current plans to practice in Pennsylvania. It follows, that because the Council's right to litigate this matter is derivative of Dr. Lynne's, the case must be dismissed in its entirety.

We will issue an appropriate order dismissing the complaint without prejudice.

### ORDER

AND NOW, this 23rd day of September, 1987, it is ordered that:

1. Defendant, the State Board of Dentistry, is dismissed from this action.

2. Plaintiffs' complaint is dismissed without prejudice as presently not being ripe or appropriate for adjudication on the merits.

3. Plaintiffs' motions for a preliminary injunction and for entry of an order are dismissed as moot.

4. The Clerk of Court shall close this file.

4. By way of comparison, in *Meyers* plaintiff had sought damages as well as injunctive relief.